[No. 1709, November 17, 1915.]
FULLEN v. FULLEN.

SYLLABUS BY THE COURT.

1. Sections 4179, 4180, 4229, Code 1915, interpreted, and held that an application for judgment is not a motion requiring five days' notice, and that where a cause has been submitted and taken under advisement, the parties are entitled to notice for no particular length of time, as to the form and substance of the judgment, so long as opportunity is afforded to be heard upon that subject, and to take exceptions to the findings and conclusions, and to propose others, so that their respective contentions may be fairly represented on the record.                    P. 223

2. It is a fundamental rule of appellate practice and procedure that an appellate court will consider only such questions as were raised in the court below. This rule has ex-

press statutory sanction in this jurisdiction.  Section 4506, Code 1915.

P. 224

3.  Where there are two or more separate and independent causes of action in a given case, there may be as many separate and distinct final judgments therein.

P. 227

4.  In such a case, even in jurisdictions where terms of court are preserved, the lapse of the term will not deprive the court of jurisdiction of the cause, but simply of the judgment which was rendered during such term, if it was a final judgment.                                    P. 229

5.  In this jurisdiction, by reason of section 4185, Code 1915, there are no terms of court except for jury trials, and a judgment which disposes of all, or one or more, of the separate and independent causes of action in the case becomes a final judgment upon its rendition and entry, in the sense that the same passes from the further control of the court, and except a default judgment (section 4227, Code 1915) and an irregularly entered judgment (section 4230, Code 1915), and except for such purposes as all courts always retain control over their judgments.

P. 229

6.  No relief will be afforded in this court from findings of fact made by the trial court, which are supported by substantial evidence.                              P. 233

7.  The matters mentioned in the seventh paragraph of the opinion require no decision of any question of law.

P. 234

8.  Where the court has found the necessity to exist for a provision for the support of minor children out of the property of the parties to a divorce proceeding, and where such provision is made in the decree, it is error to withhold from

them the benefits of such provisions until their return to the jurisdiction, from which they have been clandestinely removed by the mother, when the withholding of such benefit is apparently, by way of punishment of the guilty mother. The measure of the infants' claims upon the court, and upon the funds set aside for them is their necessities, independent of any misconduct on the part of either party to the divorce proceedings.

P. 236

9. A "final decree" is one which disposes of the case or a distinct branch thereof. It is one which either terminates the action itself, or decides some matter litigated by the parties, or operates to divest some right, in such manner as to put it out of the power of the court making the same after the expiration of the term to place the parties in their original condition.

P. 228

Appeal from District Court, Chaves County; McClure, Judge.

Suit by Louis O. Fullen against Dorothy B. Fullen. From decree for plaintiff, defendant brings error. Remanded, and affirmed in part.

W. W. GATEWOOD of Roswell, for plaintiff in error.

No notice of the decree was given to the attorneys, and it is therefore void.
Sub-sec. 136, sec. 2685, C. L. 1897.

Statute requires that when notice of motion is necessary it must be served five days before time appointed for hearing.
Sub-sec. 98, sec. 2685, C. L. 1897.

Because of the impossibility of proving adultery by direct evidence, it may be proved by circumstantial evidence.
1 Enc. of Ev. 628 and cases.

Fullen v. Fullen, 21 N. M., 212.

If the recriminatory charge of adultery be established the divorce should be granted.

1 Nelson Div. & Sep., sec. 429; 1 Bish. Mar. & Div., sec. 92.

The same doctrine applies to inhumane treatment.
Sackett v. Sackett, 49 Vt. 195.

Likewise the doctrine applies to drunkenness.
Handy v. Handy, 124 Mass. 394; 1 Nelson Div. & Sep., p. 428.

As to divorce decree being a final decree, see:
Stewart v. Maxwell, 1 N. M. 563; Evans v. Dunn et al., 26. Ohio St. 439, 444; Shannon v. Hemphill, 7 Tex. 184; Neal v. Hill, 16 Cal. 145, 76 Am. Dec. 508; Jones v. Wilson, 54 Ala. 50; Merrill v. Merrill, 92. N. C. 657; Merle v. Andrews, 4 Tex. 200; Stovall v. Banks, 10 Wall. (U. S.) 583; Forgay v. Conrad, 6 How. (U. S.) 201; Barnhard v. ————, 7 How. (U. S.) 650; Dow v. Blake, 148. Ill. 76, 39 Am. St. 156.

As to constituents of an interlocutory decree in divorce, see:
Inglehart's Pl. & Pr. 407.

If decree is final at end of term, court thereupon lost jurisdiction.

12 A. & E. Enc. Law (2d ed.) 816; Hastings v. Cunningham, 35 Cal. 549.

A judgment is not divisible and there cannot be two final judgments in same case.

1 Black Judg., sec. 24; Wooters v. Kaufman, 3 S. W. 465; Burton v. Barnell, 5 Tex. 140; Boatright v. Lenan, 6 Tex. 243; Martin v. Crow, 28 Tex. 615; Frizzle v. Johnson, 30. Tex. 31; Ledyarl v. Brown, 39 Tex. 402; Long v. Garnett, 45 Tex. 401.

The legal title to the property being in defendant below, it follows as a presumption of law that it was her separate property.

Sec. 10, c. 37, L. 1907.

Cross-examination may be extended to the general subject of the direct examination.

2 Elliott Ev.. sec. 920; Dole v. Woolredge, 142 Mass. 161, 184; Chandler v. Allison, 10 Mich. 460; Boyle v. State, 105 Ind. 460, s. c. 5 N. E. 203; Gremmill v. State, 16 Ind. App. 154, 158, 43 N. E. 909; Louisville, etc., R. Co. v. Wood, 113 Ind. 544, 557, 14 N. E. 572, 16 N. E. 197; Pickard v. Bryant, 92 Mich. 430, 52 N. W. 788; Marion v. State, 20 Neb. 233, 29 N. W. 911; Barker v. Blound, 63 Ga. 423; Lamprey v. Munch, 21 Minn. 379; Buckley v. Buckley, 12 Nev. 423; Kibler v. McIlwain, 16 S. C. 550; Meadock v. Kennedy, 80 Wis. 449, 50 N. W. 393; Washburn v. Chicago, etc., R. Co., 184 Wis. 251, 54 N. W. 504; Yost v. Minneapolis, etc., Works, 41 Ill. App. 556; Herrick, v. Swomley, 56 Md. 439; Richmond, etc., R. Co. v. Hissong, 97 Ala. 187, 13 So. 209; Gilmer v. Higley, 110 U. S. 47; Eames v. Kaiser, 142 U. S. 488, 12 Sup. Ct. 302; Home Benefit Assn. v. Sargent, 142 U. S. 691, 12 Sup. Ct. 332; 1 Greenl. Ev., sec. 445.

The court erred in denying allowance for care, support and education of minor children and in making such allowace dependent on action of third party outside the jurisdiction of the court.

2 Nel. Div. & Sep., secs. 981 et seq.

O. O. ASKREN and RENEHAN & WRIGHT of Santa Fe, for defendant in error.

As to doctrine of final decrees, see:
Evans v. Dunn, 26 Ohio St. 439.

Court did not lose jurisdiction on account of the expiration of the court term.

Weaver v. Weaver, 16 N. M. 98, 106.

Fullen v. Fullen, 21 N. M. 212.

A final decree is not necessarily the last decree rendered, by which all proceedings in a case are terminated and nothing is left open for the future judgment or action of the court.

Black on Judgments, vol. 1, par. 41; Sharon v. Sharon, 7 Pac. 456, 463; Alexander v. Bates, 28 So. 415, 419, 127 Ala. 328.

For cases when rule that there can be but one final judgment in a case does not apply, see:

Black on Judgments, vol. 1, par. 41; Sharon v. Sharon, 65 Fed. 373; Tuttle v. Claflin, 88 Fed. 122; McCreary v. Robinson, 92 Tex. 408, 49 S. W. 212; Trustees v. Greenough, 105 U. S. 527; Tucker v. Tell, 25 Ark. 420, 432; Brush Elec. Co. v. Elec. Imp. Co., 51 Fed. 557, 561, 2 C. C. A. 373; Teaff v. Hewitt, 1 Ohio State, 511, 520, 59 A. D. 634; Thomas v. Chicago & E. Ry. Co., 139 Ind. 462, 39 N. E. 44; Needham v. Gillaspy, 49 Ind. 245, 246; Home Elec. Light & Power Co. v. Globe Tissue Paper Co., 44 N. E. 191, 145 Ind. 324; Cook's Heirs v. Bay, 5 Miss. (4 How.) 485, 486; Davie v. Davie, 52 Ark. 224; 20 Amer. St. Rep. 170.

The jurisdiction of a trial court to decree the custody and support of children is a continuing one, and subject to be revoked at any time.

14 Cyc. 804; McKay v. Superior Court, 120 Cal. 143, 52 Pac. 147, 40 L. R. A. 585; Miner v. Miner, 11 Ill. 43; Cowls v. Cowls, 8 Ill. 435, 44 A. D. 708; Andrews v. Andrews, 15 Ia. 423; Kendall v. Kendall, 5 Kans. App. 688, 48 Pac. 940; chap. 62, Laws of New Merico, 1901, sec. 27.

As to latitude allowed in cross-examination, see:
Borrego v. Territory, 8 N. M. 479, 480.

Findings of fact will not be disturbed when they are supported by substantial evidence.

Pecos Valley Imm. Co. v. Cecil, 99 Pac. (N. M.) 695, where cases are collected. See also Territory v. Sais, 103 Pac. (N. M.) 982, and cases cited therein..

## OPINION OF THE COURT.

PARKER, J.—This is a suit for divorce, partition of community property, the establishment of rights to separate property, and for the custody of minor children, in which defendant in error was plaintiff, and plaintiff in error was defendant. On July 1, 1912, an amended complaint was filed, charging cruel and inhuman treatment of plaintiff by defendant; alleging the adoption of a female child by plaintiff and defendant, and as the issue of the marriage the birth of a male child, who was then living; alleging the ownership of separate property by each spouse at the time of marriage and the accumulation of community property during the marriage. Plaintiff prayed an absolute divorce, for the disposition of the custody of the two children by the court, and for the settlement of the interests of the parties in the community property and the establishment of their respective rights in and to the separate property.

The defendant answered, denying the allegations of cruelty, and, by way of counter-claim, charged plaintiff with various marital offenses; claimed to own practically all of the property of the parties; alleged her fitness to have the custody of the two children, and the plaintiff's unfitness for the same; and prayed for an absolute divorce, the custody of the children, and the establishment of her title to the property. The counter-claim was afterwards abandoned in so far as the prayer for divorce is concerned, and the defendant filed an amended answer to the complaint, in which she did not pray for a divorce. In this answer she denied the allegations in the complaint of cruelty. By way of new matter and recrimination in the answer, the defendant alleged that the plaintiff was an unfit person to have the custody of the children by reason of the facts that he had no affection for them, was a man of bad moral character, an habitual drunkard, an habitual frequenter of bawdyhouses, and was habitually given to adultery. In the answer the defendant, by way of recrimination, alleged, specifically, that the plaintiff had been guilty of adultery with a large number of wo-

Fullen v. Fullen, 21 N. M. 212.

men, naming them; that he had been guilty of cruelty to defendant in that he had, on certain specified occasions, violently and brutally assaulted and beaten defendant, and had instigated false accusations against her, causing her arrest and trial, and resulting in her being compelled to give a peace bond, and had reviled her, and had applied to her degrading, obscene, and shameful epithets, and had for the last year come to their home almost constantly in such a beastly state of intoxication as to render himself utterly intolerable to defendant; that he gambled habitually and on certain specified occasions had humiliated defendant by being publicly in company with prostitutes, and had neglected to support defendant according to his means, station in life, and ability, and that for more than one year last past he had been guilty of habitual drunkenness. The answer alleged that defendant was the owner of certain specified real and personal property in Eddy and Chaves counties, and prayed for the establishment of her title thereto, and alleged that the parties owned certain community property, one-half of which she demanded. Defendant further alleged that plaintiff was indebted to her in certain large sums of money loaned to, or converted by, him out of her separate property. Defendant prayed for the dismissal of plaintiff's complaint; for the custody of the two children; for alimony, both permanent and pendente lite, and for counsel fees; for the establishment of her separate property rights and her rights in the community property; and for judgment against plaintiff for said sums of money so loaned or converted.

In the meantime, plaintiff had filed a reply to the counter-claim of defendant, and when the amended answer of defendant was permitted to be filed, it was agreed that this reply to the counter-claim should be taken and considered as a reply to the amended answer.

The plaintiff in his reply denies that he is an unfit person to have the custody of the two children, and specifically denies the acts and conduct alleged against him as reasons for his unfitness. He denies all acts of adultery

charged against him. He denies the cruel treatment and failure to support, and habitual drunkenness charged against him. He denies the allegations of the answer as to the ownership of most of the property involved, and asks that his rights therein be established. He denies the loan to him of money by defendant, and the conversion by him of money received for the support of the girl child. By way of new matter and recrimination as reflecting upon the fitness of the defendant to have the custody of the two minor children, the plaintiff alleged that the defendant is a woman of erratic, violent, and uncertain temperament, unsettled as to her movements, moving constantly from place to place, making it impossible for the children to have the care and attention they require, and depriving them of a systematic and proper course of education; that defendant is a woman habitually addicted to the use of profane, indecent, and obscene language, indulging in outbursts of temper and using the most vulgar language, the same being done in the presence and hearing of said children; that defendant is a person habitually addicted to the excessive use of intoxicating liquors; that she is almost constantly under the influence of liquors and drugs; that on information and belief plaintiff states that the defendant is a person of unsound mind, and frequently threatened the life of the said children; that she is a person of extravagant and theatrical forms of speech and action, and delights in the creation of situations which would shock and appal the mind of an ordinary and refined person, but which she enjoys with much zest and relish, to-wit, by exhibiting her person to apparent strangers whom she has met, perhaps, for the first time at some informal meeting in her home, apartment, or elsewhere; that she has frequently denied to plaintiff that plaintiff was the father of the infant male child, and has alleged that he was the child of one ————, of New York City; that she is what is commonly termed an adventuress, in that she seeks to extort from men friends and acquaintances money by questionable methods; that on information and belief he alleges that in the city of

New York, in August or September, 1911, she had gone to the apartment of this alleged father of the boy child, and charged him with being the father of the child, and demanding that the man support said child, and furnish her with money upon which to live; that upon refusal so to do, she made an assault upon this man with a hat pin, and in defending himself against such attack, defendant was beaten by the man, and that thereupon she caused his arrest, and the whole matter became public in the newspapers of New York; that defendant is in the habit of having men visit her in her home or in her apartments at all hours of the day and night, and conducting herself in such a way as to cause notoriety, discussion, and scandal; that during her stay in Roswell, the said alleged father of said boy child visited Roswell at her instance and request, and remained for quite a time, ostensibly stopping at a hotel, but frequenting the house of plaintiff and defendant whenever plaintiff was away from home; that during plaintiff's absence in the city of Washington a certain other named man came to the home of plaintiff in Roswell, and remained there for a number of days and nights, the only person present in the house during such stay being the man, the defendant, a small Mexican girl, and the infant boy; that at the apartments maintained by defendant in the city of New York and in Roswell, N. M., she permitted men of questionable character and habits to visit her at all hours during the day and night, and that she drank and conversed with them, and caroused, frequently receiving them when she was in bed and in a state of deshabille; that defendant is what is technically known as a "kleptomaniac," and that she habitually appropriates property of others, and converts it to her own use, and especially from hotels where she is stopping, or merchandise from stores; that the veracity of the defendant is bad, and it is her habit to practice deception on trades people, bankers, physicians, railway agents, telegraph operators, postmasters, telephone operators, and others by means of forged and bogus letters, telegrams, and false impersonations and untruthful statements, and

the employment and use of confederates. Wherefore plaintiff prayed that the defendant be denied the care. and custody of the minor children. By way of new matter the plaintiff alleges, as a defense to the defendant's claim for alimony and for the support of said minor children, that no allowance to her for the support of the infant boy was necessary because he, the plaintiff, was able and willing to care for and maintain said infant, and was the proper person to do so, and that it was unnecessary to award maintenance for the female child, because he, the plaintiff, was willing and able to care for and maintain said child, and for the further reason that her father is a man financially able and willing to carry out an agreement made at the time of the child's adoption by plaintiff and defendant to provide funds for her maintenance, and that said father had advanced large sums of money for said child, and was willing to continue to do so; that no allowance of either temporary or permanent alimony should be made to the defendant for the reason that she is a person especially equipped and qualified for theatrical work, and that she could employ herself in that line at a salary of at least $10,000 or $15,000 annually; that said work is not distasteful to defendant, but it is only because of her over-indulgence in intoxicants and drugs and fondness for sordid excitements that she has declined to engage in the work; that defendant is a writer of considerable ability, her productions having been accepted by such well-known periodicals as the Sunset and Smart Set, and that, if defendantt would apply herself, her earning capacity would be at least 10 times greater than the earning power of plaintiff; that defendant is an expert typist, capable of earning a large monthly salary by this work alone; that the allegations and prayers of defendant for alimony are not made in good faith, but are actuated by her venomous feeling toward the plaintiff; that such allegation is made in part in the statement of the defendant herself.

At the trial the plaintiff failed to deny on the stand the adultery charged against him on one occasion. Evi-

dence by witnesses who were unimpeached was produced, tending to establish circumstantially this act of adultery. The court made a mixed finding of law and fact as follows:

"10. The court further finds that sufficient of the allegations of cruelty contained in the complaint of the plaintiff have been established to authorize and warrant the divorce prayed for in said complaint, and that the defendant has been guilty of extreme cruelty practiced towards and upon the plaintiff at various and divers times, as alleged in the plaintiff's complaint, and without cause, excuse, or justification on her part, and that no sufficient proof of recriminations as alleged by the defendant in her answer has been established to avoid the granting of the decree of divorce to the plaintiff or to deprive him of his right thereto."

The court thereupon entered a decree of divorce. At the time of the entry of the decree of divorce, counsel for defendant appeared before the court and made two objections, viz.: (1) That no sufficient notice of the proposed rendition of said decree had been had by defendant's counsel; (2) that said proposed decree was only a partial decree, disposing only of the question of divorce, and leaving for future disposition the division of the property and the custody of the children. The latter objection is not argued in the briefs, and will not be further noticed.

[1] The first objection is founded upon the provisions of sections 4180 and 4229, Code 1915, which are as follows:

"Sec. 4180. When a notice of a motion is necessary, it must be served five days before the time appointed for the hearing, but the court or judge may extend the time of hearing, or by an order to show cause, prescribe a shorter time."
"Sec. 4229. Upon any hearing before the judge of a court, wherein the judgment of the court upon such hearing shall not be rendered at the time of such hearing, but shall be taken under advisement by the judge, no judgment or order relative to the matters pertaining to such hearing, shall be entered until notice of the same shall have been given to the attorneys for the respective parties in the action."

The argument in support of the objection is that this decree was made upon motion of plaintiff, and that where a motion is heard, five days' notice of the hearing is required, which same was not had in this case. The argument is clearly faulty. In the first place, this was not a

case of a hearing of a motion. While a motion for a decree was filed by plaintiff, this was mere surplusage. It was a case of an application to the court to act in the case and pass judgment. This is clearly pointed out by the provisions of section 4179, Code 1915, which provides that a motion is an application to the court for some direction other than a judgment. That the objection sought to be founded upon section 4229, supra, is not well founded is apparent. When a case has been submitted and taken under advisement by the court, the parties should have an opportunity, before the decree is entered, to suggest the form of the decree, except to findings of fact and conclusions of law by the court, if so advised, and to propose other findings and conclusions, so that their respective views, theories, and contentions may be fairly represented by the record. If this opportunity if offered to a party, he has had all that he is entitled to by way of notice. And in this case the defendant's counsel was present, had opportunity to examine the decree and note what it contained, and to take such exceptions and to propose such findings and conclusions as he desired. He contented himself with the objection that he had not had five days' notice. The objection was clearly not well founded. All that the section contemplates is that notice and opportunity to be heard shall be had.

[2] Counsel for appellant argues at length that the overwhelming weight of the evidence supports the charges of defendant by way of recrimination. Therefore it is argued the decree awarding divorce is erroneous. The condition of the record prevents an examination of the evidence in this regard so far, at least, as concerns the divorce decree. As heretofore seen at the time of the passing of the decree of divorce, the sole objection thereto on the part of defendant was the alleged want of sufficient notice, and that the same was partial and incomplete, purporting to dispose of only one of the issues in the case. No objection to the decree, as such, was interposed; no exception to the findings or conclusions was suggested, nor were other findings or conclusions proposed. The gen-

eral exception appearing in the decree as follows: "To which decree, judgment, and orders defendant then and there duly excepts"—conveys, under the circumstances in which it was made, no intimation that the decree was erroneous, or, if so, upon what ground.

This situation requires us to discuss generally the subject of taking and preserving exceptions in the district court so that they may be available in this court. It is a fundamental rule of appellate practice and procedure that an appellate court will consider only such questions as were raised in the lower court. 2 R. C. L., p. 69, § 52; 2 Cyc. 660; Elliott, App. Proc., § 470; 3 C. J. 689. There are many reasons for this almost universal rule. In the first place, the judicial departments of the governments in America are established for the purpose of maintaining the rights and redressing the wrongs of the citizen and the state. Courts are not maintained for the purpose of providing a forum where one litigant may win a lawsuit against another. The lawsuit is merely a means to the end desired, viz., the award of exact justice as nearly as may be. In the trial of causes the court is neither in law nor in fact the guardian of the interests of the respective litigants, except in the broad sense that it is the duty, and the uniform desire, of every judge to award every right to which a party may be shown to be entitled. But in ascertaining those rights, many considerations must come into view. The services of trained and skilled lawyers, thoroughly conversant with the facts and the law of the case, and thoroughly alive to the interests of their respective clients, are required to assist the court in arriving at the correct conclusions. The nature of the subject is such that the court, although always endeavoring to do full justice, is unable, alone, always to see fully and clearly all of the avenues leading to the truth, either of law or fact. Hence it is the plain duty of counsel, in case the court goes too far, or not far enough, or makes a mistake to the injury of his client, to make the same known in some appropriate form, to the end that the error may be then and there corrected, and

the client then and there may receive his just award. Common fairness between court and counsel requires this, the object of a lawsuit being, not to catch the trial court in error, but to ask for and obtain from him all to which the client in justice is entitled. The judicial department is maintained at large expense for the benefit of the citizen, and the state is interested that litigation may be speedily and correctly determined in the first instance. Reversal and retrials of causes result in a direct draught upon the public treasury, and are highly undesirable, unless necessary in order to preserve the rights of the citizen.

The same spirit of fairness requires proper conduct toward the opposing party in a lawsuit. It is true each litigant must look out for his own interests, but the opponent should have an opportunity to avoid, by amendment or by supplying defects in his proof, errors which can be so avoided, to the end that the litigation may be then and there terminated with justice to both parties.

The rule is placed upon other considerations by some of the courts and writers. Thus in Drew v. Madison School Twp., 146 Iowa, 721, 125 N. W. 815, the rule is sustained upon the ground that the Supreme Court, not being a court of original jurisdiction, cannot consider, on appeal, any matter not submitted below. In Woods v. Bryan, 41 S. C. 74, 19 S. E. 218, 44 Am. St. Rep. 688, the same principle is adopted, and the court says that the Supreme Court, "having only appellate jurisdiction, cannot consider an original question made here for the first time." In Elliott, Appellat Procedure, § 481, the author founds the rule on the same proposition. In 2 R. C. L. 71, it is said that:

"An all-sufficient reason for the existence of this rule is that if the question had been raised in the lower court, the objection might have been remedied, and otherwise, if an objection not raised below could be raised in the appellate court, there would be no assurance of any end to the litigation, as new objections could continuously be raised on successive appeals."

A fine discussion of the proposition is found in a dissenting opinion of Wheeler, J., in Coles v. Kelsey, 2 Tex. 541, 47 Am. Dec. 661.

Whatever the true foundation for the rule be, it is firmly established everywhere, and has often been recognized and applied here, both by the state and territorial courts. Chambers v. Bessent, 17 N. M. 487, 134 Pac. 237; Lund v. Ozanne, 13 N. M. 293, 84 Pac. 710, citing many of the older cases; State v. Padilla, 18 N. M. 573, 139 Pac. 143. We have, besides, express statutory sanction for the rule in this jurisdiction. Section 4506, Code 1915.

This rule applied to this case forbids the overturning of the finding by the court below. Had objections to the finding been interposed and other findings been proposed, then the defendant would be in a position to present to this court such questions as to the findings as it would be proper for us to consider. Having failed, the error committed against her, if it was error, has been waived.

It is true that this point was not formally urged in the brief of defendant in error filed herein. Counsel, however, when the cause was submitted, orally made the point before the court, and it is therefore proper for us to consider the same.

In this connection it is to be noted that the question of divorce was not the real question in the case, but the real controversy was rather concerning the disposition of the two minor children and the disposition of the property of the parties. The defendant alleged in her amended answer that the plaintiff and defendant had permanently separated, and no longer lived or cohabited together as husband and wife. It is true that she did not ask for a divorce by way of counter-claim, but, having permanently separated from the plaintiff, she disclosed that her real contest was for the children and the property.

[3] The divorce decree was rendered October 19, 1912. The following term of the court opened on the first Monday in November, 1912. The decree of distribution of the property and awarding the custody of the children was rendered February 7, 1914. Certain fatal

consequences to the latter decree are alleged to result from this situation.

It is argued generally that there can be but one decree in a case, and, the divorce decree being a final decree, the court could render no other or further final decree in the cause. The argument is based upon a false assumption.

[9] There may be more than one final decree in a given case. A final decree is one which "disposes of the case, or a distinct branch thereof." 2 R. C. L., p. 40, § 22. It is one which—

"either terminates the action itself, or decides some matter litigated by the parties, or operates to divest some right, in such manner as to put it out of the power of the court making the same, after the expiration of the term, to place the parties in their original condition." 3 C. J. p. 441, §§ 258, 259 (4) (a).

In 1 Black on Judgments, § 24, it is said:

"But this rule [the rule that a judgment to be final must dispose of the entire case] does not apply where several distinct causes of action are united in the same suit."

He cites Klever v. Seawell, 65 Fed. 373, 12 C. C. A. 653, which fullly supports the text.

There is no rule of law, of which we are advised, which requires all of the separate and independent issues in a case to be decided at the same time. Where the cause of action is single, of course, all of the issues must be decided, or there will be no final judgment. But in a case like the present, where there are three distinct and independent causes of action, which may, by express statutory authority (section 2774, Code 1915) be maintained either separately or jointly, there may be three distinct final judgments in the same case. Besides, in this jurisdiction, we have express statutory sanction for the rendition, when necessary, of more than one judgment in the same action. Section 4187, Code 1915. The practice of rendering separate judgments, even where allowable, is not to be encouraged, because it may lead to the necessity of two or more appeals in the same case. But

the question of the existence of such necessity, we assume, may well be left to the discretion of the district courts. It follows that the whole argument on this proposition fails.

[4] It is argued by counsel that, having rendered a final decree of divorce, and the term at which it was rendered having expired, the court automatically loses all further jurisdiction of the cause. Therefore, it is argued, the decree of distribution and awarding the custody of the children is a nullity. The whole contention arises out of a failure to observe a plain distinction. It is true that in those jurisdictions having fixed terms of court, after the lapse of a term at which a final judgment is rendered, the court loses jurisdiction over the same, and cannot thereafter, except in some circumstances not present in this case, change, modify, vacate, or annul the same. The judgment has then become a finality. But the court does not thereby lose jurisdiction of the cause. It retains jurisdiction of the cause until there has been a complete adjudication of all the issues between the parties. It thus appears that, conceding that the court lost jurisdiction over the divorce decree at the close of the term at which it was rendered, it did not lose jurisdiction of the remaining two separate and independent issues in the case, and was entirely warranted in the action taken.

[5] We feel it necessary, in this connection, to call attention to section 4185, Code 1915, and the decisions thereon. This section provides that:

"The district courts, except for jury trials, are declared to be at all times in session for all purposes, including naturalization of aliens."

This section was first considered in Henry v. Lincoln Lucky & Lee Mining Co., 13 N. M. 384, 85 Pac. 1043. In that case the question was whether a motion for a new trial was filed during the term, as required by statute, and that in turn depended upon whether the term had been adjourned sine die. It was held that the adjournment order was in such form as to adjourn the court, but not the term, and that consequently the motion

was in time. The court held, however, that the term was adjourned by operation of law by the beginning of the succeeding term, thus recognizing the existence of terms of court, notwithstanding the above provision. It is to be observed, however, that this was a jury trial.

In Territory v. Armijo, 14 N. M. 205, 89 Pac. 267, the question was whether the court had jurisdiction to hear a quo warranto proceeding, there having intervened a term of court, held according to the statute, in another county in the same district. It was held that the term of court of a given county was not adjourned except by an order in terms adjourning it to the next term, or by the arrival of the day designated by law for the beginning of another term of the same court for the same county. The hearing in that case in the district court was had in vacation; that is, there was no jury in attendance upon the court. In commenting on the above section and section 4186, Code 1915, the court said:

"The term of court is now preserved in this jurisdiction mainly, if not wholly, for jury trials and matters incidental to or connected with them and except for such purposes the district courts are declared to be always open."

In Weaver v. Weaver, 16 N. M. 98, 113 Pac. 599, the question was whether the court had jurisdiction to vacate a divorce decree, regularly entered, more than one year after its rendition, and it was held, of course, that it had not. The court said:

"For ordinary cases, at least, the time within which a judgment can be vacated is limited. If the court rendering a judgment has terms, its control of the judgment is usually limited to the term in which it was rendered. Bronson v. Schulten, 194 U. S. 410 [26 L. Ed. 797]; Grames v. Hawley [C. C.] 50 Fed. 319. But in this jurisdiction, in view of the provisions of section 2875, C. L. 1897, that the district courts in the several counties 'shall be at all times in session,' for the numerous purposes named in the statute, it can hardly be said that there are terms of court, except for purposes connected with jury trials."

The section of the C. L. 1897, referred to, is not the same section under discussion, but was similar in terms.

Fullen v. Fullen, 21 N. M. 212.

The court thus clearly indicated its view that there are no terms of court in this jurisdiction, except for jury trials, and, that being so, the jurisdiction of the court does not terminate with the beginning of the following term. In Crichton v. Storz, 20 N. M. 195, 147 Pac. 916, this court considered this same section. In that case a party filed a bill to foreclose a merchanic's lien. A judgment was rendered for the amount of the indebtedness, for the costs of filing the lien, and attorney's fees, as provided by the statute, but failed to establish the lien upon the land. This was evidently omitted from the decree by inadvertence. Under these circumstances we held that even after the term at which the decree was rendered, the decree might be amended in this substantial particular, because the plaintiff was entitled, as of course, to the relief, and the omission was from inadvertence. We further held that the lapse of the term in no way deprived ·the court of its control over its judgment. In that case there was no discussion generally of the question as to when final judgments pass from the control of the court. We simply held that there are no terms of court in cases tried by the court without a jury, and that the lapse of a jury term had no effect upon the powers of the court over its judgments. The question remains, however, as to when, ordinarily, a court loses control over its final judgments in cases tried without a jury.

At common law the court, during the entire term at which judgments were rendered, had plenary power over the same, and might vacate, set aside, modify, and annul them. This was upon the theory that until the term closed the whole matter of the determination of the rights of litigants rested in the breast of the court and; theoretically at least, all judgments became final as of the last day of the term. 23 Cyc. 901, 902; Thompson v. Goulding, ·5 Allen (Mass.) 81; 1 Black on Judgments, § 305. But in this and a few other jurisdictions where terms of court have been abolished by statute, a different application of the same principle has been introduced. Terms· of courts have ·nothing whatever to do with the matter.

Judgments, without jury trial, are not rendered as of any particular term, but they take on their final character as of the date of rendition. Thus in Thompson v. Goulding, 5 Allen (Mass.) 81, the statute provided that the courts were to be always in session, and that all orders and decrees should bear date as of the date of entry, and the court said:

"These enactments confer on the court and on the justices thereof full power to make and enter all decrees in equity, either interlocutory or final, at any time, irrespective of the regular terms established by law for the transaction of business on the common-law side of the court; and decrees so entered must be operative from the time when they are entered of record. This follows necessarily, because there is no other time from which they can be held to take effect. It then becomes the definitive judgment of the court; it is, in a strict sense, a record by which the rights of the parties in controversy are finally adjudged. To a decree so entered, the fiction of law by which a term of court is held to be an entirety, or one session, so that all judgments, unless otherwise specially ordered, are deemed to be rendered as of the last day of the term, and until the final adjournment to be within the control of the court, does not apply."

In Grant v. Schmidt, 22 Minn. 1, the court, after speaking of the term rule at common law, says:

"This theory is not retained under the present practice. The summons is not returnable at any term. The cause need not be brought on at a term unless there is an issue to be tried. The judgment, whether in fact entered during a term or in vacation, is not entered as of any term. The control of the court over causes coming before it (except where retained by statute, and except the necessary control over its records which every court has) terminates with the entry of the judgment."

In Pace v. Ficklin, 76 Va. 292, it is said:

"A decree dismissing a bill with costs, upon the hearing, must, of necessity, be final, and if rendered in vacation, under the statute, takes effect from the time it is entered of record by the clerk. The judge pronouncing it cannot, if so inclined, by subsequent action impart to it a different character."

In Sturdevant v. Stanton, 47 Conn. 579, the judge heard a case in term time, and it remained undecided at the close of the term. Later the judge, in vacation, ordered a decree "that respondent recover costs," and no more. Later the judge rendered a different decree. The court said:

"To the judge thus holding a cause for advisement is to be conceded only the power to do the one thing for which, in the understanding of both parties to it, he retained it, that is, to render a judgment, one judgment, no more; one judgment, one decree, once for all; no power to change or annul for the reasons assigned."

It is perfectly clear that we have no terms of court, except for jury trials. The district courts are always in session, independent of the jury terms. We have no statute extending the control of a court over its judgments, after entry thereof, except in two instances, viz., in cases of defaults for a period of 60 days (section 4227, Code 1915); and in cases of irregularly entered judgments for a period of one year (section 4230, Code 1915.,

It follows, both on reason and according to precedent, and taking into consideration the necessity for a' rule of certainty and finality, that final judgments of the district courts in cases tried without a jury become final when rendered, and then and there pass from the further control of the court, except in the two instances above mentioned.

In this connection, it is to be noted that this holding still leaves the court with the same powers over its judgments as formerly possessed after term time. The Crichton Case,. supra, is an example of the exercise of such power.

, It follows that the whole argument of counsel, based upon the lapse of the term of court, fails, and has no application in this or any case tried without a jury.

[6] The court made findings of fact as to the ownership of the property of the parties. In the third, fourth, and seventh paragraphs of the brief, counsel sets forth an analysis of the testimony in the record upon these questions, and argues that the findings are erroneous. The

court made a division of the property into three classes, viz.: The separate property of the plaintiff; the separate property of the defendant; and community property. These findings and conclusions involved not a single question of law, but the findings were made from the testimony of the parties, all of which we have carefully examined. If the testimony of the plaintiff is true, the findings are correct. If the testimony of the defendant is true, the findings are grossly erroneous, and she owned practically all of the property as of her separate estate. The court saw and heard the parties, and was in much better position to reach the correct conclusion than we are. A reading of the transcript does not disclose what can be said to be a clear preponderance one way or the other. The position of the defendant is simply that the court should have believed her instead of the plaintiff. But every finding of fact is supported by substantial evidence. That no relief can be afforded in this court under such circumstances is not an open question. Candelaria v. Miera, 13 N. M. 360, 84 Pac. 1020; Pecos Valley Immigration Co. v. Cecil, 15 N. M. 45, 99 Pac. 695; Territory v. Sais, 15 N. M. 171, 103 Pac. 980; Lockhart v. Mining Co., 16 N. M. 223, 117 Pac. 833; Goldenberg v. Law, 17 N. M. 546, 131 Pac. 499; Lyons v. Kitchell, 18 N. M. 82, 134 Pac. 213, Ann. Cas. 1915C, 671; James v. Hood, 19 N. M. 234, 142 Pac. 162.

[7] Early in the proceedings an order was made committing the custody of the two minor children to the plaintiff. The defendant, in contempt of the order, removed both of them from the jurisdiction to the state of California, where they were at the time the decree was rendered. The court, under these circumstances, and really from necessity, awarded their custody to the defendant upon condition that she support them at her own expense so long as she kept them without the jurisdiction of the court. The court set apart the major portion of the community property for the support of the children, and placed the same in the hands of a trustee for their benefit so soon as they should be returned to the jurisdic-

tion. In determining that neither party should be such trustee, the court made the following findings:

"(e) The court further finds under present conditions and circumstances that the plaintiff herein would not be a proper or suitable person to act as such guardian or trustee."

"(f) The court further finds that the defendant is not a suitable or proper person to act as such guardian or trustee, for that she is unreliable and not trustworthy, and is addicted to the excessive use of intoxicating liquors and to the use of injurious drugs and narcotics, and has no respect for law, courts, contracts, or the rights of other persons, or the reputation of her own offspring, and entertains vile and abominable ideas and beliefs as to the sexual relation, and from the standpoint of honesty and morality is wholly unfit to be trusted by any court in any fiduciary capacity."

Counsel for defendant attacks this finding against her, not upon the ground that it is untrue so much, but upon the ground that it involves the court in an inconsistency in this, that if the defendant is such a person as appears from the findings, she is an unfit person to have the custody of the children, but, nevertheless, the court has committed such custody to her. We can see nothing in the contention. As before seen, the defendant, in contempt of the orders of the court, removed both of the children from the jurisdiction. The court's actual control over them had ceased by reason of the wrongful action of the defendant. His decree is in terms made temporary in character, and was evidently made ex necessitate, notwithstanding the court's view of the defendant's unfitness. We do not understand that her counsel desires a reversal of the decree awarding the custody of the children to her upon the ground that she is an unfit person to have the same. This would deprive her of that for which she has so strongly fought, legally and illegally, throughout this case.

The findings in regard to her ideas and beliefs as to the sexual relations is founded upon her own testimony. She has what she calls advanced ideas upon this subject. She testified that plaintiff was not the father of the boy; that he was physically unfit for such purpose. She says that in New York she and the plaintiff jointly selected a

man who possessed the necessary physical qualifications (this is denied by plaintiff), and that she assumed sexual relations with him with the result that she gave birth to this child; that afterwards she returned to New York and resumed the same relations for the purpose of bearing another child. Without comment, we will simply say that such standards are not the present accepted legal standards of marital conduct.

[8] There was a finding that the welfare of the children required that a portion of the property of plaintiff and defendant should be set aside for their maintenance. This was done in the decree, and the property placed in the hands of a trustee. The decree, however, prevents the proceeds of this property from becoming available for the purpose indicated until the children are returned to this jurisdiction. They are not sui juris, being infants of tender years, and are within the control of the defendant. Their return to the jurisdiction is entirely dependent upon the will of the mother, and under the circumstances in this case, where she has braved the dangers of open defiance of the orders of the court in order that she might surely keep her children, the provisions of the decree are not presently available to them. Defendant is shown by the record to be without means, and she was allowed in the decree only a small amount of personal property and one lot in the city of Roswell.

Counsel argues that the court, having found the necessity for the support of the children to exist, and the duty of the plaintiff to contribute thereto to still remain, it was error to make the availability of the allowance to the children dependent upon the will of a person not under their control.

Counsel cites 2 Nelson on Divorce and Separation, § 983, to the effect that it is error, even where the husband obtains the divorce, to make no allowance for the children committed to the wife's custody, if she is without means. The text is supported by Tuggles v. Tuggles (Ky.) 30 S. W. 875. The case furnishes no argument or princi-

ple upon which the decision is based, and furnishes no light on the question before us.

The general principle upon which allowances are made against the husband for the support of minor children awarded to the wife in divorce cases is that it is the primary common-law duty of the husband to support his children; that this duty continues with him when, from his own fault, the marriage relation is dissolved, and the society and services of the children are taken from him and committed to the wife for his fault. 2 Bishop, Mar., Div. & Sep., § 1223; Spencer v. Spencer, 97 Minn. 56, 105 N. W. 483, 2 L. R. A. (N. S.) 851, 114 Am. St. Rep. 695; 7 Ann. Cas. 901, and note; Graham v Graham, 38 Colo. 453, 88 Pac. 852, 8 L. R. A. (N. S.) 1270, 12 Ann. Cas. 137, and note.

On the contrary, where the husband obtains a divorce for the wife's fault, as in this case, it has been held that she has no claims upon the husband for their support. Fulton v. Fulton, 52 Ohio State, 229, 39 N. E. 729, 29 L. R. A. 678, 49 Am. St. Rep. 720.

This holding would seem to be entirely correct in so far as it prevents a recovery against the husband for necessaries furnished by her, she being the cause of the marital difficulties. That was the case before the court. But even in that case, and in the circumstances there present, it was recognized that the necessities of the infants might require the father's contribution to their relief.

The cases referred to concern themselves with the question of the right, duties, and liabilities of the parents as between themselves in regard to the support of the children. If this is provided for in the decree, the decree is the measure of responsibility. If not provided for in the decree, the responsibility is fixed by the principles of the common law. But where the interests of the children themselves are concerned, we can see no reason to take into consideration, at all, the faults of either or both of the parents for which the children are in no way responsible. If they are in need of support in the circumstances

in which the court has placed them by its decree, then it is the duty of the court to make provision out of the property of the parties for their support, and to make the fund available for their immediate necessities.

We appreciate that these matters, ordinarily, rest in the discretion of the trial court. But in this case, where the court has found as a fact that it was necessary to provide for the support of these children, and where the father is found to be obligated to contribute to such support, and where the court has set aside a portion of the common property of the parents for that purpose, and placed the same in the hands of a trustee, as he is authorized to do by section 2778, Code 1915, these children ought not to be deprived of the benefit of such provision simply by way of punishment of the delinquent mother for her misdoings during the progress of the trial, for which they are, of course, in no way responsible. We appreciate that the decree in this regard is subject to the further orders of the court in its discretion, by the very terms of the statute, but this discretion must be a sound, legal discretion, and not an arbitrary one. We assume that the discretion intended is a discretion to modify the decree upon new and changed circumstances, as they may be made to appear from time to time. We also appreciate that the children are not nominally parties to the cause, but in substance and effect they are such parties. The statute authorizes the creation of a trust fund for their benefit, which has been done in this case. They have become the beneficial owners of this fund, subject to the supervision of the court. The court should not have withheld from them the use of such portion thereof as their necessities demanded. The court found they had the right, but denied the same until an act, dependent upon the will of another and beyond their power or control, was performed. This was error. If the record fails to disclose the amount required for the necessities of these children, further evidence can be taken upon this point upon the remanding of the cause, as will be done.

Certain minor questions are presented in the .fifth and sixth paragraphs of the brief. In them complaint is made of the limitation upon cross-examination of the plaintiff, as to whether he had not gotten a certain young woman in the family way. The occurrence, if it occurred, took place long before the marriage of the parties. The proof was offered for the purpose, as stated by counsel of mitigating the reprehensibility of defendant's conduct in beating and cursing plaintiff. We can hardly see how a wife would be justified in such conduct toward her husband, even if she did discover, after marriage, some of his prior delinquencies. The evidence, if admitted, could have made no change in the findings of fact as made.

The cause will be remanded, with directions to modify the decree to the extent of making available out of the fund provided for the children an amount sufficient for their reasonable necessities by way of support and education, as ascertained from the evidence in the record, or if this is insufficient, from further evidence to be taken by the court, and the decree in all other respects will be affirmed; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

SYLLABUS BY THE COURT.

