102 P.2d 668

No. 4518.

**SHEPPARD et al. v. SANDFER et al.**
**SANDFER et al. v. GILBERT et al.**

Supreme Court of New Mexico.

April 25, 1940.

Lake J. Frazier, of Roswell, for appellants.

Atwood & Malone, of Roswell, J. C. Gilbert, of Hot Springs, and Kiker & Sanchez and Anthony J. Albert, all of Santa Fe, for appellees.

MABRY, Justice.

There are here involved two principal questions. One, whether the property, the title to which was sought to be quieted by plaintiffs, J. L. Sheppard and D. Sheppard, and which was by judgment and decree of the trial court quieted in their successors in title, appellees Mabie and wife, had been conveyed by defendants Sandfer and wife as by a mortgage deed securing a note, or whether the deed they gave was an outright conveyance; as on its face it purported to be. The other question goes to the right of the trial court to vacate and set aside, for alleged irregularities, a judgment and decree theretofore made and entered by it. This conveyance, which presents a question as to the character of title passing to one Fears, the original grantee of appellants Sandfers, and therefore a like question as to his subsequent grantees, was in the form of a warranty deed and conveyed the same property which some five years before had been conveyed by the conventional form of mortgage deed likewise given by the said Sandfers to the said Fears. Appellants say that this was a conveyance in trust, or of a character unlike that which, upon its face, it appeared to be. The trial court took an opposite view and this is the error upon which appellants rely for a reversal.

The comfort which appellants Sandfers seek to obtain from a reversal of the cause is, that appellees be required to bring suit to foreclose, as of a mortgage, rather than to permit them or any of them as successors in title, to rely upon the deed as an absolute conveyance.

For convenience, appellants may, at times, hereafter be referred to as defendants, or the "Sandfers", and appellees, the Sheppards, as plaintiffs, or the "Sheppards", while appellees, Gilbert, Milton Mabie, and Louise Massey Mabie, may at times be designated as "Gilbert" and the "Mabies", respectively.

On December 5, 1927, one of the appellants, W. J. Sandfer, gave a mortgage to one Fears upon the land here in question, to secure a note in the sum of $2,670, representing an indebtedness admitted to have been owing at the time. Thereafter and on January 2, 1933, defendants, the said Sandfer and wife, conveyed to the said Fears the same property by warranty deed; and then, within a year thereafter, the said Fears conveyed the same property by quitclaim deed to one E. J. Whitaker, through whom all appellees claim title.

The Sandfers here and now contend that the legal title to the property did not pass by the deed from them to Fears since such deed was intended for nothing more than to merely change the form of security for the indebtedness represented by the mortgage of December 1927, and that therefore the legal title to the property is still vested in Sandfer and may be divested only by foreclosure of the mortgage and not by suit to quiet title, as was attempted in this case. Appellees refute this claim, and likewise rely upon the proposition that the Sandfers are advancing the theory that the deed represents a mere change in the form of security for the first time upon appeal.

Appellees say (and the record supports them), that in the court below, defendants defended in the suit upon the sole ground that the mortgage indebtedness had already, and otherwise, been paid, and that the deed given by them to Fears, in 1933, was without consideration and for the purpose merely of putting the property conveyed beyond the reach of Sandfers' creditors, and that the grantees, Fears, and Whitaker, likewise, took only as trustee. This point will be hereinafter more fully noticed. Appellees, the Mabies, appear in the picture claiming by purchase in 1938 as innocent purchasers for value without notice of any equities existing between appellants and the other appellees, Gilbert and the Sheppards.

It is clear from the record that Sandfers, in the court below, took the position that they had already paid the mortgage indebtedness to the mortgagee Fears, and that when he and his wife gave the warranty deed in 1933, some five years thereafter, the same was given to put the said land beyond the reach of appellants' creditors, and that the said Fears took it with that understanding. Appellees would require the appellants to stand by this position taken and relied upon below, and object to their effort to now change the theory of their case, as by their brief it may appear that they are endeavoring to do. Appellees' position upon that point, is well taken, though the result would be the same in any event.

In determining the rights of all appellees as against those of appellants, let us look first to the stipulation of the parties, the evidence and the findings of the court. A complete review of the evidence, including that showing the chain and the muniments of title as this appears in the abstract, would unnecessarily lengthen the opinion without affording aid to our conclusions or light to the profession. We shall, therefore, point out only briefly the salient facts upon which the parties rely.

It is shown by the court's findings, supported by the stipulation of parties and substantial evidence, that appellees Mabies purchased this property on October 12th, 1937, through appellee Gilbert, who was successor in title to the Sheppards, entirely upon the record title and with no notice of outstanding equities, if any. The deed from Sandfers to Fears, upon its face, appeared to be a warranty deed and nothing else; none of the other deeds of record

and no other circumstances shown by the evidence were of a character to put the Mabies on notice that the Sandfers had any interest in the land, unless it may be said the fact that the mortgage from the Sandfers to Fears in 1927 had not been released of record, and the additional circumstance that, in the probate of the estate of the said Fears who died in 1934, one of the Sheppards, a legatee under the will of the deceased and executor of the estate, inventoried this old mortgage and accounted for it in closing the administration, gave such notice.

We hold that the status of the Mabies as innocent purchasers for value without notice, was not, under the circumstances, jeopardized because the abstract and record upon which they relied in purchasing, showed this old and unreleased mortgage. Having no other notice, and their immediate predecessors in title being in possession at the time of the purchase, and, in view of the warranty deed of January 1933, conveying fee simple title from the mortgagors Sandfers to the mortgagee Fears, aided by a circumstance hereinafter noticed, appellees had the right to assume that the mortgage was paid and satisfied. The circumstance of Sheppard and appellants then strangers to the title, trying to revive and involving the paid and discharged note and mortgage in the estate of the deceased Fears, by listing it as an asset, could not affect the rights of others, and certainly not those of the Mabies. The circumstances offering support for this result are, that the record discloses that at a time some four months prior to the Mabie purchase, a suit to quiet title to this property had been filed by the Sheppards, against the Sandfers, a defense interposed and then withdrawn, thus knowingly permitting the Sheppards, plaintiffs, to take default judgment establishing their right in the property as against the Sandfers. The trial court was correct in holding the record gave no warning of which the Mabies were required to take notice.

Under all the facts and circumstances presented by the record, and in the light of the court's findings in support of this view, it must be said that appellees Mabies, were bona fide purchasers in good faith and without notice.

All appellees, including the Mabies, rely upon another defense which will now be noticed. This is more important and is the question upon which this decision will rest.

Before taking up this point, however, it may be well to observe another inescapable obstacle lies in appellants' path even though we accept their theory of the deed transaction.

Appellants did not rely in the court below, upon the theory that the warranty deed was given as a new form of security merely. The reliance there was upon Sandfers' claim that the debt had been fully paid and that he should have a cancellation of the evidence of indebtedness and a reconveyance of the property which had been conveyed by deed in 1933 to get it out of reach of their, the Sandfers',

creditors. The court was not much impressed by the Sandfers' endeavor to have it extricate them from the hole into which they had placed themselves, in their attempt to thus circumvent the efforts of their pursuing creditors.

In Delgado v. Delgado, 42 N.M. 582, 82 P.2d 909, 911, 118 A.L.R. 1175, we held that parties in pari delicto would ordinarily be left where their fraudulent acts have placed them. Speaking through Justice Bickley, we there said: "Ordinarily where parties to illegal contracts are in pari delicto, a court will leave them where it finds them, whether the contract is executory or executed, refusing relief to both. This action of the court gives no validity to the transaction, but deprives the parties of their right to either enforce the contract or to be relieved from it," citing 13 C.J. title "Contracts", Par. 440, as supporting authority.

In that case we also quoted with approval the following language from Moore on Fraudulent Conveyances, page 630: "The ancient and well known maxims that a right of action cannot arise out of fraud (Ex dolo malo non oritur actio), and that where both parties are equally in fault or in the wrong, the condition of the defendant and possessor is preferable (In pari delicto potior est conditio defendentis et possidentis), are the basis of the familiar rule that the parties to a transaction tainted with fraud shall be left by the courts in the situation in which they have placed themselves, without aid from the courts.

Hence, the general rule that a conveyance or transfer of property made to defraud creditors, though void as to creditors, is valid and binding on the parties thereto, ·* * *."

The Mabies purchased this property some months after a decree was entered by the district court in the original hearing, quieting title in appellees Sheppards upon default and after appellants had withdrawn their answer and cross-complaint by which they set up the same defense now relied upon. This default judgment some six months later and upon motion of appellants and over the objections of appellees Sheppards, was set aside and a new trial ordered on the ground of certain "irregularities" alleged on the part of the Sandfers. Neither the Mabies nor Gilbert were parties to this suit prior to the time of the new trial, but were brought in by answer and cross-complaint of appellants, upon the theory that, Gilbert having in the meantime purchased, and the Mabies now owning and having possession of the property, they were necessary parties to a full and complete determination of the issues.

These new parties by their separate answers presented to the trial court the question of whether it was not without jurisdiction to so set aside the default judgment theretofore rendered, and whether its action in so doing was not entirely void and the court without jurisdiction to further hear the matter and adjudicate anew the title. The court took the view that it had jurisdiction, heard the case anew, another Judge sitting in the new trial, and again

held the Sandfers had no interest in the land.

This point of whether the court had such jurisdiction turns upon the question of whether the things and matters upon which appellants relied in their motion for a new trial, were in fact "irregularities" which would give the court jurisdiction to so act; and, also, whether appellees might under the circumstances avail themselves of the error, if any.

We have held that except in two instances, viz., "in cases of defaults for a period of 60 days * * * and in cases of irregularity entered judgments for a period of one year," we have no statute extending the control of a court over its judgments after entry thereof. Fullen v. Fullen, 21 N.M. 212, 153 P. 294, 300.

Sec. 105-846, N.M.Comp.Statutes 1929, provides: "Judgments may be set aside for irregularity, on motion filed at any time within one year after the rendition thereof."

We have laid down the rule in a number of cases that only certain situations give jurisdiction to the court to disturb a judgment once rendered. Within sixty days, it could have been set aside for "good cause shown to the judge". Sec. 105-843, N.M.Comp.Statutes 1929. The motion to set aside in this case was made some four months after the entry of the judgment, and if the court had jurisdiction to do so it was under Sec. 105-846, supra, only, and because of some "irregu-larity", as this court has heretofore and rather clearly defined the term.

We said in the case of Coulter v. Board of Commissioners of Bernalillo County, 22 N.M. 24, 158 P. 1086, 1087: "The term 'irregularity' is defined to be the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner. It is a departure from some prescribed rule or regulation. [2] Words and Phrases [Second Series], p. [1204]. The original judgment entered in this case violated no rule or mode of proceeding. It was regularly entered, upon confession of judgment; hence did not fall within the terms of the above statute, unless an error of law on the part of the court constitutes an irregularity, within the meaning of the statute. That such is not the case is well established by the text-writers and adjudicated cases."

We there quoted with approval Black on Judgments, 2d Ed., § 329, where it is said: "The power to vacate judgments, on motion, is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings. It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen. That a judgment is erroneous as

a matter of law is ground for an appeal, writ of error, or certiorari, according to the case; but it is no ground for setting aside the judgment on motion."

This question was likewise thoroughly considered in Ealy v. McGahen, 37 N.M. 246, 21 P.2d 84, where we discussed void and irregular judgments and again considered the power and jurisdiction of the court to vacate and set aside a judgment within the year, absent an "irregularity" contemplated by the statute, and theretofore discussed in the Coulter case, supra. And the case at bar, like the case of Ealy v. McGahen, supra, does not come within the rule announced in Kerr v. Southwest Fluorite Co. et al., 35 N.M. 232, 294 P. 324, where we said that such statutes limiting the time for opening or vacating final judgments do not apply to cases of extrinsic fraud, etc.

See also Northcutt v. King, 23 N.M. 515, 169 P. 473; American National Bank of Tucumcari v. Tarpley, 31 N.M. 667, 250 P. 18.

At this point we call attention also to language found in the opinion in Moore v. Packer, 174 N.C. 665, 94 S.E. 449, 450, noticed by us and quoted with approval in the Ealy case, supra. It was there said: "A void judgment is without life or force, and the court will quash it on motion, or ex mero motu. Indeed, when it appears to be void, it may and will be ignored everywhere, and treated as a mere nullity." All the appellees rely upon this general rule in answer to appellants'

challenge that they never took an appeal from the order and judgment setting aside the June, 1937 default judgment and decree. The court being without jurisdiction to set aside its earlier judgment and decree, quieting title, appellees might ignore it as a void order or judgment, they say, and for this reason were not required to take an appeal therefrom, and may question the jurisdiction of the court and the validity of the order or judgment at any time. Board of County Commissioners of Quay County v. Wasson, 37 N.M. 503, 24 P.2d 1098; Fullen v. Fullen, 21 N.M. 212, 153 P. 294; Baca v. Perea, 25 N.M. 442, 184 P. 482; De Baca v. Wilcox, 11 N.M. 346, 68 P. 922.

As to the Mabies, they could not, in any event, have taken such an appeal, as they were not parties to the suit at the time of the default judgment. It is clear that all appellees by proper pleas, in one form or another, when they were required to appear and plead in the re-opened suit, raised the question that the Sandfers were estopped and barred from further prosecuting any claim to the property, and gave ample notice that they relied upon the conclusive effect of the judgment of June 21, 1937.

The motion to vacate the June 1937 default judgment was filed on the 17th of November following. The motion suggested two grounds which, in substance, were: (a) That all prior pleadings in the case having been verified, the unverified motion to vacate, filed by the

Sandfers through their then attorney of record, should likewise have been verified; (Sec. 105-424, N.M.Comp.Statutes, 1929) and (b) that the order allowing the defendants Sandfers to withdraw their pleadings (in fact an answer and cross complaint) did not specify anything but the answer, and that the cross complaint, therefore, remained standing and undisposed of when the default judgment was rendered.

Motions of this character need not be verified. There is no occasion, ordinarily, for any motion to be verified. 49 C.J. Title Pleading, § 1087, page 762. This one might as well have been made orally in open court. It simply undertook a withdrawal of all defenses in preparation for plaintiffs to make proof and take their judgment. Counsel representing Sandfers at that time, had theretofore advised his clients that if he later found they had no defense he would withdraw the pleadings filed, and thus avoid having them bear any costs of the case.

An examination of the record discloses no support for appellants' position, highly technical, upon either ground. It is clear that the court intended to and did grant the motion and request of defendants, the Sandfers, made by the attorney at that time representing them, permitting and ordering the withdrawal of their complete pleading. No other reasonable meaning can be imputed to the order. There was, therefore, no "irregularity" upon which the learned trial court had jurisdiction to so act, and the order and judgment in so vacating the default judgment was void.

We hold that the court was without jurisdiction to set aside the default decree of June 21, 1937. Hence, all steps taken subsequent thereto, were void and of no effect, notwithstanding the fact that the result is the same under each decree.

For the reasons stated, the judgment is reversed, with instructions to reinstate the cause upon the docket of the district court; to then dismiss all proceedings subsequent to the entry of the judgment of June 21, 1937, and to show the said judgment re-entered as the judgment of the court; and, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.