# THE STATE OF NEVADA, Appellant, *v.* ROBERT LOGAN, Respondent.

An order of the District Court quashing an indictment, discharging the defendant and exonerating his bail, is a final judgment from which an appeal may be taken.

State of Nevada *v.* Logan.

A judgment is final which completely disposes of the action.   To make it final it is
not necessary that the rights of the parties should be finally determined, or that
it be upon the merits.   It is final if it disposes of the particular suit in which
it is rendered.

An indictment should not be quashed merely because the Grand Jury received
some illegal or incompetent testimony.   If there is *any* legal testimony to sus-
tain it, it should not be set aside.

Though the law declares that the Grand Jury shall receive none but legal evidence
in support of an indictment, yet it does not follow that the admission of incom-
petent testimony will authorize the District Court to set it aside.

If there be nothing to support the bill but evidence clearly incompetent and which
would not be admissible at the trial, as the testimony of a person rendered
incompetent by conviction of an infamous crime, the indictment may be set
aside on motion before plea.

But to authorize the setting aside of an indictment, even where there is no compe-
tent evidence to support it, that fact must appear by proof, independent of the
testimony of the Grand Jurors who found the bill, for it is inadmissible for them
to show that the indictment was found without testimony or upon insufficient
testimony.

Grand Jurors may be called to testify against a witness who is indicted for perjury,
to prove what was sworn to before them, or to show that the indictment is not
found by the requisite number, but the testimony of no Grand Juror cannot be
received to impeach or affect the findings of his fellows.

APPEAL from the District Court of the Second Judicial Dis-
trict, State of Nevada, Ormsby County, Hon. S. H. WRIGHT
presiding.

The defendant was indicted on the 15th day of March, A.
D. 1865, by the Grand Jury of Ormsby County.   The indict-
ment charged him with having collected the sum of nine thou-
sand nine hundred and eighteen dollars and sixty-eight cents,
belonging to the County of Ormsby and the Territory of
Nevada, while he occupied the position of Tax Collector for
the County of Ormsby, which he refuses to account for or pay
over to the Treasurer of the county, as required by law.   On
the 21st day of March, A. D. 1865, counsel for defendant filed
a notice of motion to quash the bill, for the reason that it
"was found upon illegal and incompetent evidence."   To sus-
tain this motion, one of the Grand Jurors who found the
indictment was called, sworn and examined as to the character
of testimony received and acted upon by the Grand Jury.
Several of the witnesses who appeared before the Grand Jury
were also examined as to what they testified to before them.
The prosecuting attorney objected to the examination of the
Grand Juror and the witnesses.   His objections were however

overruled, and upon the showing made by them the indictment was quashed. The only fact attempted to be established by the Grand Juror and these witnesses upon the motion was that certain evidence claimed to be incompetent was received by the Grand Jury in finding the indictment. The Grand Juror testified that the evidence claimed by counsel to be incompetent was not the only evidence in support of the indictment.

*Thos. E. Haydon* and *Atwater & Flandrau*, Attorneys for the People.

The Court erred in entertaining and considering defendant's motion and in admitting any evidence to support it, and the whole proceeding upon the motion to quash was irregular, unprecedented and outrageous.

It is error to quash an indictment for matter not apparent in the body of the indictment itself. (Archibald's Crim. Law, vol. 1, pp. 102–3.)

The policy of the Grand Jury system is that an *ex parte* inquisition may be had by the Grand Jury on the part of the community, and if the Grand Jury find sufficient evidence to convince *them* that the accused ought to be put upon trial, it is their duty to return a true bill of indictment. (1 Arch. Crim. Law, sec. 98, pp. 101–2–3–4.)

Even if the Court did not err in admitting such motion and in allowing testimony to support the same, the testimony which was in fact admitted was incompetent upon a motion to quash the indictment, for the Grand Jurors could not legally testify in that case as to what occurred in the jury-room, or what was there testified to by witness. (Wharton's American Crim. Law, vol. 1, sec. 508; 1 Chitty's Crim. Law, secs. 317–319; 4 Blackstone, 126, 303; *State* v. *Bassett*, 16 Conn. 457; *State* v. *Baker*, 29 Mo. 238; *People* v. *Hubbard*, 4 Denio, 133; *State* v. *Boyd*, 2 Hill, S. C., 288; *Tusk* v. *State*, 2 Hammond, part 2, 240; *Rex* v. *Cook*, 8 Carr. & P. 582.)

Admitting the regularity and legality of the proceedings upon the motion to quash, and that some incompetent evidence was heard by the Grand Jury, still there was a sufficient amount of competent testimony presented upon which to find

an indictment, and this indictment so found cannot be for that reason quashed; neither can the motives of the Grand Jury be impeached. (1 Wharton's American Crim. Law, sec. 493.)

The evidence heard upon the motion to quash shows that the evidence offered before the Grand Jury, and upon which the indictment was found, was the best evidence and the only evidence contemplated by law upon which to find an indictment in such cases, to wit: the admissions of the defendant.

Where the admission is deliberately made and precisely identified, the evidence is of the most satisfactory character. (1 Greenleaf on Evidence, sec. 200.)

Admissions arise from the character, conduct and language of the parties to the record; from their actions and acquiescence (1 Greenleaf, secs. 195–6–7), and there is no difference between direct and incidental admissions or those made in other connections. (1 Ib. sec. 194.)

*R. W. Clark*, for Defendant.

The jurisdiction of the Supreme Court is declared by the Constitution. (See Section 4, Article VI. Judicial Department; and by section 6, Laws of 1864, p. 111; and by section 469, Laws of 1861, p. 485.) Subsequent sections of the Criminal Practice Act, from 470 to 494 inclusive, prescribing the machinery by which an appeal shall be taken.

The appellate jurisdiction of the Supreme Court extends only to those cases in which the Legislature authorizes it to entertain appeals. (1 Cal. 347; 3 Cal. 248; 5 Cal. 190.)

No appeal is provided by the statutes from an order setting aside an indictment. (Sec. 6, Statutes of 1864, p. 111; sec. 469, Statutes of 1861, p. 485.)

No appeal being provided, this Court has no jurisdiction. (5 Cal. 517; 7 Cal. 117; 10 Cal. 527; 10 Cal. 503; 12 Cal. 424; 24 Cal. 427.)

An order setting aside an indictment is not a final judgment, and the case cannot therefore be appealed; the person may again be arrested, indicted and tried. (Wharton's American Criminal Law, sec. 551; 6 Cal. 543 and 546; Statutes of 1861, p. 465, sec. 283.)

Opinion by Lewis, C. J., full Bench concurring.

The defendant was indicted by the Grand Jury of the County of Ormsby for a refusal to pay over certain money to the County Treasurer which was c ollected by him as Tax Collector of that county.   Upon the 21st day of March, A. D. 1865, the defendant, by his counsel, moved the Court to quash the indictment upon the grounds, as stated in the notice of motion, that it "was found upon illegal and incompetent evidence, which illegal and incompetent evidence was improperly permitted to go before the Grand Jury, and was improperly heard, considered and acted upon by them."

It is also stated that such illegal and incompetent evidence was the only evidence submitted to said Grand Jury.

To sustain this motion, one of the Grand Jurors who found the indictment, and some of the witnesses who testified before them, were called for the purpose of showing what the character of the testimony was and what certain witnesses testified before them.

The counsel for the people objected to the entire proceeding, which being overruled, one of the Grand Jurors was examined as to the character of the testimony upon which the indictment was found, from which it appeared that the books of account kept by the Treasurer and Auditor of Ormsby County, were received and acted upon by the Grand Jury, and also some receipts and other papers, together with the Treasurer's account with the defendant.   Witnesses were also questioned as to what they testified before the Grand Jury, all of which was allowed, the entire proceeding apparently being for the purpose of showing that incompetent testimony was received and acted upon by the Grand Jury in finding the indictment against the defendant.   It was not even attempted to be shown that there was not sufficient competent testimony to authorize the finding of the indictment.   The Court below sustained the motion and entered judgment quashing the indictment and releasing the defendant's bail.   Upon these facts four questions are presented to this Court for determination:

*First*—Is the quashing of an indictment and releasing the

defendant's bail a final judgment, within the meaning of the Criminal Practice Act authorizing appeals?

*Second*—Does the admission of incompetent testimony by a Grand Jury authorize the setting aside of an indictment upon the finding of which such incompetent or illegal testimony was received and considered?

*Third*—Is it competent for a member of a Grand Jury to testify as to the character or sufficiency of the testimony before them, upon the finding of an indictment?

*Fourth*—Was the testimony received by the Grand Jury, upon finding the indictment in this case, incompetent or illegal?

In support of his position on the first question, counsel for respondent claims that the order made by the Court quashing the indictment and exonerating defendant's bail, is not a final judgment from which an appeal can be taken. By the 469th section of the Criminal Practice Act, it is provided that an appeal may be taken "to the Supreme Court from a final judgment of the District Court in all criminal cases."

A judgment is final which completely disposes of the action. To make it final it is not necessary that the rights of the parties should be finally determined, or that it be upon the merits. It is final if it disposes of that particular suit in which it is rendered. As stated by the Court in the case of *Belt* v. *Davis* (1 Cal. 138), "A judgment of nonsuit other than where the plaintiff submits to a voluntary nonsuit, is a final judgment, even though no costs be awarded against the plaintiff, inasmuch as he is aggrieved by being defeated of his right of action in that suit and his costs in prosecuting it."

In the case of *Weston* v. *The City Council of Charleston* (2 Peters, 449), the Supreme Court, in construing the 25th section of the Judiciary Act of the United States, which provides that a final judgment or decree in any suit in the highest Court of the State, may be re-examined, reversed or affirmed in the Supreme Court, it was held that the words "final judgment" in that section must be understood to apply to all judgments or decrees which determine the particular cause, and that it was not requisite that such judgments should finally determine the rights which are litigated.

So it is held by the Court of King's Bench in England that by a final judgment is understood not a final determination of the rights of the parties, but merely of the particular suit. Adopting this signification of the words "final judgment" there can be no doubt as to the character of the judgment rendered by the Court in this action. The indictment was quashed, the defendant discharged and his bail exonerated. It was most clearly a final disposition of all proceedings under that indictment, unless the judgment of the Court is reversed, and the defendant could only be tried for the offense charged upon the finding of another indictment. It was as complete a determination of the prosecution upon *that* indictment as the verdict of a jury acquitting him could have been; the only difference being that the verdict would protect him from a prosecution for the same offense, whilst the dismissal of the indictment, though final as to all further proceedings under it, would be no protection against a prosecution under another indictment upon the same charge. We, therefore, conclude that the judgment of the Court was final, within the meaning of section 469 of the Criminal Practice Act, and the appeal properly taken.

The proposition that if a Grand Jury receive and consider any but legal proof, the indictment found by them may be quashed, upon that fact being shown to the Court, having no authority to support it, and being so manifestly repugnant to the utility of the entire Grand Jury system, scarcely justifies an extended consideration. It is urged on behalf of defendant that as the law provides that "the Grand Jury shall receive none but legal evidence, and the best in degree to the exclusion of hearsay or secondary evidence," the admission of hearsay or secondary evidence may be taken advantage of on motion to set aside the indictment under section 275, which declares that it shall be set aside by the Court, on the motion of defendant, where it is not found indorsed and presented in the manner prescribed by the Criminal Practice Act. That if any but the best legal evidence is received, the indictment is not *found* in the manner prescribed by the Act. The answer to this simply is that the finding of the bill has no reference to the evidence upon which it rests, but only to the fact that the Grand

Jury finding it must be legally constituted, and that twelve of their number concurred in the finding. This section merely announces an old rule, which the Courts generally recognize, but which has never been carried to the extent of allowing an investigation of the testimony upon which a bill was found, to ascertain if it was properly found. That a Grand Jury should receive none but legal proof, is an old and well established rule, but that the admission of evidence not strictly legal will authorize a setting aside of an indictment, is a proposition which seems to have no authority to sanction it, and, if adopted, would only be an impediment to the execution of criminal justice, for it is evident that, under the present practice, not one indictment out of five could be found, where it could not be shown, that some illegal proof was received. As none but legal evidence can be introduced upon the trial of the defendant, it would be clearly improper to find an indictment where there is not sufficient *legal* evidence to justify a conviction; hence the rule that the Grand Jury should receive none but legal evidence.

But the reason of the rule will not authorize the setting aside the indictment, merely, because evidence not of the best legal character is received and considered. If there be nothing to support the bill but evidence clearly incompetent, and which would not be admissible at the trial, as the sole testimony of a person rendered incompetent by conviction of an infamous crime, the indictment may be quashed before plea (1 Wharton's American Criminal Law, sec. 493), but where there is the slightest legal evidence, the Court cannot inquire into its sufficiency, or set it aside, because some illegal evidence was received with it. But to authorize the setting aside of an indictment even where there was no legal evidence at all to sustain it, that fact must appear by proof independent of the testimony of the Grand Jurors, for it is inadmissible for them to show that an indictment presented by them was found without testimony, or upon insufficient testimony. (Wharton's American Criminal Law, secs. 508, 509.)

This was the rule at common law, and seems to be generally recognized throughout the United States. (*Rex* v. *Marsh*, 6 Adolphus & Ellis, 236; *State* v. *McLeod*, 1 Hawks, 344; *State* v. *Baker*, 2 Miss. 538; *The People* v. *Hulbut*, 4 Denio, 135;

*State* v. *Fassett*, 16 Conn. 457.) In the latter case Chief Justice Bronson, in delivering the opinion of the Court, said: " But the evidence which the defendant proposed to give could amount to nothing less than an impeachment of the Grand Jurors. They had found a bill charging the defendant with five different offenses, and the substance of the offer was to show that only one offense had been proven before them. It cannot be proper to allow the jurors to be thus assailed. To permit the question to be tried over again in another place, whether the indicting jurors had sufficient evidence or any evidence to warrant their finding, would be contrary to the policy of the law, which, in everything that may affect the jurors themselves, has placed the seal of secrecy upon the proceeding."

The only exception to this general rule seems to be that where a person is indicted for perjury on account of false testimony before a Grand Jury, the jurors may be called as witnesses to prove what was sworn to before them. So it has been held that they may be called to show that an indictment was not found by the requisite number, though this is in conflict with the common law rule. But to receive the testimony of a Grand Juror for the purpose of impeaching or affecting the finding of his fellows, is a practice not yet sanctioned by the Courts, and it is to be hoped never will be.

Where indictments have been quashed on account of there being no legal evidence to sustain them, it has invariably been in those cases where that fact was shown without calling upon the Grand Jurors; as, for instance, where the law requires the names of the witnesses examined to be indorsed on the indictment, and the name of but one witness is so endorsed, who is shown to be incompetent by reason of some legal disability.

That is a fact which could be proven without calling upon the Grand Jurors, and when it is shown to the satisfaction of the Court, it would be proper to quash the indictment.

But if the practice adopted by the Court below were in fact correct, the bill should not have been quashed, for the evidence received by the Grand Jury, so far as we are able to ascertain what it was from the record, was entirely competent, and of the best legal character.

No better evidence could be obtained than the defendant's own receipts with the books of accounts kept by the different county officers with him. It is probably the only evidence by which the exact delinquent amount can be ascertained.

Judgment reversed.