## DUNHAM v. ANDERS.

(Filed May 7, 1901.)

CONSTITUTIONAL LAW—*Vested Right—Judgment of Justice of the Peace—Penalty—The Constitution, Art. XIV, Sec. 7—The Code, Sec. 1870.*

A judgment of a Justice of the Peace for a penalty, though appealed from, is a vested right, and can not be divested by legislative enactment.

ACTION by the State on relation of J. R. Dunham against W. K. Anders, heard by Judge *Frederick Moore* and a jury, at Spring Term, 1901, of BLADEN County Superior Court.

This is an action originally brought before a Justice of the Peace to recover a penalty of two hundred dollars under the provisions of Article XIV, section 7, of the Constitution, and section 1870 of The Code. The 3d paragraph of the complaint alleges: "That from the first Monday in July, 1897,

up to and including the first Monday in April, 1898, the defendant exercised and performed the duties, powers and functions of both the officers aforesaid, to-wit, the office of County Commissioner of Bladen County and the office of member of the Board of Education for Bladen County." On March 25, 1899, the plaintiff obtained judgment for the amount of the penalty, from which the defendant appealed to the Superior Court. Upon the trial in the Superior Court, the defendant introduced the following act of the General Assembly, ratified on the 2d day of March, 1901, which is as follows:

## AN ACT FOR THE RELIEF OF CERTAIN CITIZENS.

Whereas, the Supreme Court of North Carolina decided in the case of *State ex rel. Barnhill v. L. G. Thompson,* at February Term, 1898, that the same person can not hold the office of County Commissioner and also be a member of the Board of Education; and, whereas, certain persons honestly believing that they had the right to hold both positions, did hold the same, till the rendition of said decision, and thereby incurred the penalty prescribed in section 1870 of The Code;

*The General Assembly of North Carolina do enact:*

SECTION 1. That all persons who held the office of County Commissioner and the office of member of the Board of Education at the same time prior to and up to the 1st day of July, 1898, be and they are hereby relieved and shall not be held liable for the penalty prescribed in section 1870 of The Code, or for any other penalty by reason of the holding of the said two offices.

SEC. 2. This act shall apply to suits now pending for the collection of said penalties: *Provided,* that the Court in which such action is pending may order the costs in the ac-

DUNHAM *v.* ANDERS.

tion to be paid by either party in the event such action is dismissed by reason of the provisions of this act.

SEC. 3. This act shall be in force from and after its ratification.

Whereupon, the following issues were submitted to the jury and answered in manner and form following:

ISSUES.

1. Did the defendant hold two offices, as alleged in the complaint?

Answer. Yes.

3. Did the plaintiff obtain judgment against the defendant for the penalty sued for in this action on the 25th day of March, 1899, before J. M. Bryan, an acting Justice of the Peace for Bladen County?

Answer. Yes.

3. Did the defendant appeal from said judgment rendered by the Justice of the Peace, and is said appeal now pending?

Answer. Yes.

4. Was said appeal pending on the 2d day of March, 1901?

Answer. Yes.

5. Did the plaintiff's cause of action exist within twelve months prior to the commencement of this action?

Answer. Yes.

Upon which verdict the plaintiff moves for judgment. Motion refused, and his Honor, *Fred. Moore,* Judge presiding, being of the opinion that the act of the General Assembly, ratified on the 2d day of March, 1901, and introduced in evidence by the defendant, destroyed the plaintiff's cause of action and relieved the defendant of any penalty incurred by reason of Article 14, section 7, of the Constitution of North Carolina, and section 1870, chapter 45, Volume I, of The

Code of North Carolina, rendered judgment in favor of defendant.

From a judgment for defendant, the plaintiff appealed.

*R. S. White* (and *Lewis & Schulken* by brief), for the plaintiff.

*James H. Pou* and *C. C. Lyon,* for the defendant.

DOUGLAS, J., after stating the facts. The only point presented for our consideration is whether a plaintiff can by a Justice's judgment, remaining unreversed, acquire such a vested right in the penalty as can not be taken from him by the Legislature.

Cooley in his work on Constitutional Limitations, says at page 443: "So, as before stated, a penalty given by statute may be taken away by statute at any time before judgment is recovered." But the same distinguished author says at page 443: "But a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference."

In the recent case of *Dyer v. Ellington,* 126 N. C., 941, this Court says on page 944: "An informer has no natural right to the penalty, but only such right as is given to him by the strict letter of the statute. It is not such a right as is intended to be protected by the act, but is one created by the act. He has in a certain sense an inchoate right when he brings his suit, that is, the bringing of the suit designates him as the man thereafter exclusively entitled to sue for that particular penalty; but he has no *vested* right to the penalty until judgment. Until it becomes *vested,* we think it can be destroyed by the Legislature. If the penalty had been reduced to judgment, or had been given to the injured party in the nature of liquidated damages, the case would be essentially different."

In that case the act of remission was passed while the action was pending in the Justice's Court, and *before judgment.* In the case at bar, the act was passed *after* judgment in the Justice's Court, and while the action was pending on appeal in the Superior Court. Upon the trial in the latter Court, all the issues involved in the case before the Magistrate were found for the plaintiff. It thus appears that no error was found in the Justice's judgment, which neither was, nor could have been, reversed upon its original merits. It therefore stands in full force and effect, subject only to the plea in bar of the remitting statute, upon which alone the Judge below based his judgment in favor of the defendant.

This brings us to the consideration of the nature of a judgment obtained before a Justice of the Peace, and the effect thereon of an appeal to the Superior Court. If such a judgment is a final judgment, that is, a judgment finally disposing of the subject-matter of the action, subject only to reversal on appeal, and remains in full force and effect until such reversal, notwithstanding the mere fact of appeal, then, in our opinion, it becomes a vested right of property in the plaintiff that can not be divested except by a reversal on its original merits. In other words, the plaintiff can not be divested of his property therein by merely legislative action.

Of course if the plaintiff had failed to recover before the Justice of the Peace, and had himself appealed, he would have had no vested right, as he would have had no judgment to which such a right could attach. He would have only a qualified right of action, exclusive as far as the particular penalty is concerned, but subject to loss by legislative interference. A judgment of a Justice of the Peace is a *final* judgment when it fully disposes of the subject-matter of the action, since, unless reversed on appeal, it finally determines the rights of the parties. An appeal to the Superior Court does not vacate the judgment, nor even suspend its operation.

Code, sec. 875. It is true the appellant may obtain a stay of execution of the judgment by giving an undertaking to secure the full amount of the judgment, together with all costs, as provided by sections 882, 883, 884 and 885 of The Code; but the judgment otherwise remains in full force and effect, even retaining its lien on real estate when properly docketed, which is one of the highest attributes of a judgment. While the trial on appeal in the Superior Court is *de novo,* yet the judgment appealed from remains in force until reversed or modified by a judgment of the Superior Court. *Hiatt v. Simpson,* 35 N. C., 72, 74; *Whitehurst v. Transportation Co.,* 109 N. C., 342, 344. In *Dysart v. Brandreth,* 118 N. C., 968, 973, this Court says: "A Justice's judgment, when duly docketed in the office of the Clerk of the Superior Court, becomes a judgment of the Superior Court to all intents and purposes"—citing *Cannon v. Parker,* 81 N. C., 320; *Adams v. Guy,* 106 N. C., 275; "and it becomes a lien on all the real estate of the defendant in the county where it is docketed, which continues for ten years from the date of docketing"—citing *Cannon v. Parker, supra; Murchison v. Williams,* 71 N. C., 135. "The fact that defendant appealed from the judgment of the Justice of the Peace, and gave security to stay execution, did not deprive the plaintiff of the right to have the judgment docketed, nor *did it take away the lien of the judgment."*

The defendant's counsel cited some authorities in other jurisdictions to the effect that the legislative authority may, by repealing a law imposing a penalty pending an appeal from a judgment therefor, defeat the judgment; or, after judgment and before execution, defeat the execution. All such cases appear to have been decided upon particular facts or principles not applicable to the case at bar; as for instance (a), the construction of local statutes; (b) where the national or State government itself prosecuted the action with only a

DUNHAM v. ANDERS.

contingent interest going to the informer; (c) where the effect of the appeal was to vacate or completely suspend the judgment.

That such is not the general effect of an appeal is shown by Black on Judgments, where the learned author says, in section 522: "The judgment of a Justice of the Peace or other inferior tribunal (in a case where jurisdiction of the parties and subject-matter appears from the face of the proceedings) so long as it remains *unreversed,* is, for every purpose, as binding and conclusive between the parties as that of the highest court of record in the State." Freeman on Judgments says, in section 524: "Where a court of special jurisdiction, having authority to decide the matter in controversy, acquires jurisdiction over the parties to the suit, its judgment is final and conclusive unless *reversed* by some appellate court."

The case at bar is the counterpart of *Dyer v. Ellington, supra,* inasmuch as the act pleaded in bar was passed *after* judgment was rendered in the Justice's Court. We are, therefore, of opinion that when the plaintiff obtained judgment for the penalty before the Justice of the Peace, he acquired a vested right of property that could be divested only by judicial, and not by legislative, proceedings.

On the issues found in the Superior Court, judgment should have been rendered for the plaintiff, and its judgment is therefore

Reversed.