CITY OF BEATRICE, APPELLEE, V. GAGE COUNTY, APPELLANT.

FILED APRIL 24, 1936. No. 29462.

*Ernest A. Hubka, Sackett & Brewster* and *C. B. Ellis,* for appellant.

*Rinaker & Delehant, Walter A. Vasey* and *H. F. Mattoon, contra.*

*W. J. Courtright et al., amici curiæ.*

Heard before Goss, C. J., Rose, Good, Day, Paine and Carter, JJ., and Chase, District Judge.

Paine, J.

The city of Beatrice filed claim with Gage county to recover certain road taxes, which claim was rejected by the county board, whereupon the city appealed to the district court, and after trial a judgment was rendered for the city. The county appeals, and the city took a cross-appeal.

On June 18, 1931, the city of Beatrice filed a claim against Gage county, asking for the payment of $63,091.11. In said claim it was set out that Gage county had been under township organization since 1885, and claiming that for the 37 years itemized therein the county board had levied road taxes against the property located in the city of Beatrice in the sum above set out, and that the county had converted the same to its own use. A legal demand was made by the city upon the county treasurer, and he refused to pay. The board of supervisors for Gage county on July 7, 1931, rejected said claim of the city of Beatrice. Notice of appeal was given to the county clerk on July 14, 1931, and on July 29, 1931, a petition was filed in the district court, setting out these facts and praying a money judgment against Gage county for $63,091.11, with 7 per cent. interest from June 18, 1931, and costs. Gage county in its answer admitted that the county had been organized as a township organization since

1885, and admitted that township road taxes were levied, assessed, and collected upon the property in the city of Beatrice, and claimed that all of said taxes in controversy belonged to the county as county road levies; under section 39-1201 and section 77-1801, Comp. St. 1929, alleged that none of the taxes in dispute were levied or collected as township road taxes; that none of said taxes were included in the annual estimate certified to the defendant county by the plaintiff city; that plaintiff's claim is barred by the statute of limitations, and that plaintiff city is estopped by reason of inexcusable delay and gross laches from asserting any valid claim to the taxes in question. Thereafter, on December 22, 1933, the respective parties entered into a stipulation of all the facts in the case, which stipulation was 13 pages long.

On January 11, 1934, the case was tried in the district court. On October 5, 1934, a judgment was entered that plaintiff city was entitled to recover one-half of the road tax collected by the defendant county upon property within the corporate limits of said city under section 39-206, Comp. St. 1929; finding further that the city was not barred from recovery by virtue of the statute of limitations, nor was it estopped by reason of delay in bringing the action, and a judgment was entered against said county in the sum of $33,148.80. A motion for new trial was filed by the county of Gage, setting out some 28 errors of the trial judge.

In the brief filed in the case at bar, appellant county assigns a number of errors, charging that the judgment was not sustained by sufficient evidence, and that the judgment entered is contrary to law; that many of the items were barred by the statute of limitations; that the city was estopped by laches and acquiescence in asserting said claim, and that, if the city is entitled to a judgment, said judgment should have deducted therefrom large amounts of offsets for expenses of bridges and roads within the city paid for by the county.

It developed in the trial that all of the road tax money collected from property in plaintiff city had been expended

on roads in the county outside of the plaintiff city, and that no part of the money was in the possession or under the control of the defendant county at the time of trial. While there was a provision in the act under which the city was incorporated which made all of this road money collected from property within the city the property of the plaintiff city, yet a certain provision of the road law, to wit, section 39-206, Comp. St. 1929, gave the plaintiff city only one-half of the money, and the district court adopted the view that such section governed, and gave the plaintiff city a judgment for one-half of the amount sued for. The defendant county appealed from the judgment, and the plaintiff city took a cross-appeal because the judgment was not for the full amount.

While the case at bar was pending in the supreme court, the legislature in the regular 1935 session enacted two new statutes, House Rolls Nos. 60 and 61 (Laws 1935, chs. 88, 31), which the county claims entirely destroys the cause of action of the city of Beatrice. On the other hand, the city claims that the legislature did not have the power to deprive the plaintiff city of its right to recover judgment, and thereby ratify the misconduct of the defendant county in its wrongful use of money held in its hands as trustee and wrongfully converted to its own use. The city charges that the action of the legislature in House Roll No. 60, which declares that section 39-206, Comp. St. 1929, does not apply to township counties, violates the plain meaning of the statute and is contrary to repeated decisions of this court, and that it conflicts with section 4, art. VIII of the Constitution, in that it attempts to release or discharge a county from taxes due a municipal corporation, and denies that the legislature has the power to allocate this money entirely to the county and take it away from the city; House Roll No. 61 is amendatory of section 16-710, Comp. St. 1929, and that the attempted amendment of this section by House Roll No. 61 is unjust and an arbitrary discrimination against cities.

Practically all of the issues involved herein have been ex-

haustively discussed in the opinion in the case of *City of Fremont v. Dodge County,* p. 856, *post,* and the contentions have there been decided in favor of the appellant in the case at bar. There is this difference between the two cases: In the *Fremont* case the legislature acted before the judgment was rendered, while in the instant case the judgment had been entered in the district court and the legislature acted while the appeal was pending in this court.

In a very early case, decided by the supreme court of the territory of Nebraska, it appeared that one Hargus had assaulted Lacy, and in consequence thereof Lacy died, and the administrator brought action for damages. In the Territorial Statutes of Nebraska of 1855, at page 145, it said: "When a wrongful act produces death the perpetrator is civilly liable for the injury." The death occurred April 25, 1856, but in February, 1857, the entire Civil Code was repealed without any saving clause, and Justice Eleazer Wakely said: "By a long course of judicial decisions it has become a settled principle that a right of action, or a remedy founded solely on a statute, or a pending suit to enforce such remedy, not prosecuted to judgment, is terminated by the repeal of such statute, without a provision for saving rights accrued under it, or suits already commenced to enforce them. The reason is apparent. If there be no such remedy at common law, then, after the unconditional repeal of the statute which created it, there is neither common law nor statute to uphold it. I need not cite authorities to sustain this position, which, as a general principle, I understand to be conceded." *Bennet v. Hargus,* 1 Neb. 419. See *Tiger v. Western Investment Co.,* 31 S. Car. 578; *id.* 221 U. S. 286; *United States v. Freeman,* 3 How. (U. S.) 556; *State v. Clausen,* 63 Wash. 535, 116 Pac. 7; *Byram v. Board of Commissioners,* 145 Ind. 240, 44 N. E. 357.

There is a much older case decided in 1801 by John Marshall, C. J., and entitled *United States v. Schooner Peggy,* 1 Cranch (U. S.) *103, 2 L. Ed. 49, which concerns the small Schooner Peggy, navigated by ten men, which ran ashore on the island ruled by General Toussaint L'Ouver-

ture, and was there captured by an American vessel as a prize and condemned as forfeited, one-half to the use of the United States and the other half to the officers and men of the armed vessel Trumbull. Before the supreme court of the United States gave judgment on the writ of error, a treaty was entered into with France on December 21, 1801, which provided that property not yet definitely condemned should be mutually restored. Chief Justice Marshall held that the property had not been definitely condemned, since the judgment of condemnation had been appealed from and was undecided at the time when the treaty took effect; that, therefore, the property should be restored, the chief justice holding: "It is, in the general, true that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. * * * In such a case, the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed, but in violation of law, the judgment must be set aside." See *Lovelace v. Boatsman,* 113 Neb. 145, 202 N. W. 418; *Kleckner v. Turk,* 45 Neb. 176, 63 N. W. 469.

"If a case is appealed, and pending the appeal the law is changed, the appellate court must dispose of the case under the law in force when its decision is rendered." Cooley, Constitutional Limitations (6th ed.) 469.

"As a general rule the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions and proceedings pending under it at the time of its repeal." 59 C. J. 1189.

When a cause of action is founded upon a statute, a repeal thereof without a saving clause, even while an appeal is pending and before final judgment, destroys all rights founded thereon, where that is the clear intention of the legislature.

Without extending this opinion further, it is our opinion

that the action of the legislature as found in House Roll No. 60 and House Roll No. 61, Laws 1935, is fatal to the claims of the city of Beatrice.

All of the other issues involved are discussed at length in *City of Fremont v. Dodge County,* p. 856, *post.* It may be suggested that the litigation in that case was in the form of an equitable action for an accounting, while the case at bar is a law action, but section 20-101, Comp. St. 1929, states that in reality we have only one form of civil action in Nebraska; therefore, legal and equitable principles, either or both, may be enforced according to the facts (*Hopkins v. Washington County,* 56 Neb. 596, 77 N. W. 53), and the instant cases afford an excellent opportunity for the application of this statute.

We therefore conclude, under the principles set out in the case of *City of Fremont v. Dodge County,* p. 856, *post,* that the trial court was wrong, and the judgment rendered is hereby

REVERSED.

GOOD, J., dissents.