MARTIN KOMETSCHER ET AL., APPELLEES, V. TED WADE,
DOING BUSINESS AS TED'S MOBILE HOMES, APPELLEE,
IMPLEADED WITH MOBILE HOME FINANCE COMPANY,
A CORPORATION, APPELLANT.

128 N. W. 2d 781

Filed June 5, 1964.   No. 35618.

Crosby, Pansing, Guenzel & Binning, Donn E. Davis, and Theodore L. Kessner, for appellant.

Dennis Sulc, Kier, Cobb & Luedtke, and Janice L. Gradwohl, for appellees Kometscher.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This action involved a conditional sales contract on a

house trailer purchased by Martin Kometscher and Jeanne Kometscher, plaintiffs, hereinafter referred to as such, from Ted Wade, doing business as Ted's Mobile Homes, and assigned to Mobile Home Finance Company, a corporation, defendants. The trial court found the contract to be usurious, declared the note and contract void and uncollectible, ordered the defendants to deliver the certificate of title to the plaintiffs, and rendered a judgment against the defendants in the amount of $378.60.

Defendant Mobile Home Finance Company, a corporation, hereinafter referred to as defendant, perfected an appeal to this court. Subsequent to the filing of the appeal, defendant filed a motion for extension of brief day, supported by an affidavit indicating that it intended to restrict the issues of the appeal to the effect and validity of remedial legislation passed by the Seventy-fourth (Extraordinary) Session of the Legislature of Nebraska, 1963, and specifically Legislative Bills 16 and 17. Defendant's brief is restricted to these issues.

Plaintiffs challenged the right of the defendant under our rules to abandon its objection to the finding of the trial court on the evidence adduced and to perfect its appeal solely on the basis of the new legislation. Under Rule 8a 2 (4) of the Revised Rules of the Supreme Court, 1963, only assignments of error urged in the trial court will be considered in this court. We are dealing here with a special situation which constitutes an exception to the rule. Legislation affecting the merits of a controversy adopted subsequent to a trial in the district court dealing with a subject matter with which the Legislature has the power to act retroactively is an exception to the requirement that only assignments of error assigned in the trial court may be inquired into in this court.

Plaintiffs argue also that a case in Nebraska must be determined on the law as it stands when the judgment of the lower court is rendered therein. On the general

proposition, we can say generally that while courts appear to have reached different conclusions concerning the validity of curative statutes which impair judgments, the recent decisions indicate that the apparent disagreement can be almost entirely eliminated by making a distinction between public and private rights. 30A Am. Jur., Judgments, § 7, p. 165. There is no question but that plaintiffs' position is correct if vested rights are involved. The question, therefore, is whether plaintiffs' rights are contractual or penal.

In the early case of Kleckner v. Turk, 45 Neb. 176, 63 N. W. 469, we held that a liability imposed as a consequence of the doing or the omission to do an act which is not measured by any injury flowing from the act or omission is in the nature of a punishment. A statute, therefore, which imposes such a liability in effect inflicts a penalty and is of a penal character. The penal character of the remedy herein is fully discussed in Davis v. General Motors Acceptance Corp., 176 Neb. 865, 127 N. W. 2d 907, in which we held usury statutes are generally held to be penal in nature and subject to amendment or repeal by retroactive legislation.

Since the submission of the case herein, L. B. 16, Laws 1963, Special Session, chapter 8, page 98, has been determined to be special legislation and in violation of Article III, section 18, Constitution of Nebraska, and therefore unconstitutional. Davis v. General Motors Acceptance Corp., supra. L. B. 16, therefore, will not be discussed further herein.

L. B. 17, Laws 1963, Special Session, chapter 9, page 103, which amends the penalty sections of the Installment Loan Act, was held to be valid and constitutional and to be applicable to all loans which are subject to the Installment Loan Act, except where an action on such loan has been reduced to final judgment. Davis v. General Motors Acceptance Corp., supra.

On this latter point, L. B. 17 specifically provides as follows: "Sec. 5. Except as to those transactions on

which an action at law or in equity has been reduced to a final judgment as of the effective date of this act, the penalty provisions of section 45-137, Reissue Revised Statutes of Nebraska, 1943, as amended by Legislative Bill 513, enacted by the Seventy-third Session of the Legislature of Nebraska and as further amended by this act and the penalty provisions of sections 45-138, 45-154 and 45-155, Reissue Revised Statutes of Nebraska, 1943, as amended by this act, shall apply to all transactions made prior to the effective date of this act." L. B. 17 became effective November 15, 1963. Judgment herein was rendered in the district court July 18, 1963. Motion for a new trial was overruled August 2, 1963, and the action was pending in this court on appeal on November 15, 1963.

Inasmuch as many of the issues raised by the parties herein have been exhaustively discussed in Davis v. General Motors Acceptance Corp., *supra*, we concern ourselves in this opinion only with two narrow problems. Has the action herein been reduced to final judgment, and if not, is the new law applicable because the action of the Legislature took place after judgment was rendered in the district court and while the appeal was pending in this court? We will consider them in reverse order.

There is some disagreement as to what law should be applied where judgment has been rendered in a court of original jurisdiction and is pending in an appellate court on appeal when a change is made in the law. There seems, however, to be very little disagreement as to what law should be applied where penalties are involved, as noted in the following found at page 1332 of an Annotation in 111 A. L. R. 1317: "Although there is some authority to the contrary (Taylor v. Rushing (1829) 2 Stew. (Ala.) 160; Dunham v. Anders (1901) 128 N. C. 207, 38 S. E. 832, 83 Am. St. Rep. 668), by the great weight of authority, in case of a change of law providing for civil penalties (as is also the rule in case of

change of criminal law, not within the scope of the annotation), the rule generally adopted is that the appellate court will determine the question on appeal, according to the law prevailing at the time of the decision on appeal, and not according to the law prevailing at the time of the rendition of the judgment appealed from." (Citing cases.)

In 5 Am. Jur. 2d, Appeal and Error, § 729, p. 173, we find the following: "Where the controlling law has changed between the entering of the decision below and the consideration of the matter on appeal, it has been said that the case should be determined in the light of the current law, as it existed at time of the appellate decision, at least where the change in the law was intended to be retroactive."

Where the Legislature has the right to act retroactively, the law appears to be settled in Nebraska. If it desires to do so, it may apply the legislation to cases pending on appeal. In City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777, we said as follows: "There is a much older case decided in 1801 by John Marshall, C. J., and entitled United States v. Schooner Peggy, 1 Cranch (U. S.) *103, 2 L. Ed. 49, which concerns the small Schooner Peggy, navigated by ten men, which ran ashore on the island ruled by General Toussaint L'Ouverture, and was there captured by an American vessel as a prize and condemned as forfeited, one-half to the use of the United States and the other half to the officers and men of the armed vessel Trumbull. Before the supreme court of the United States gave judgment on the writ of error, a treaty was entered into with France on December 21, 1801, which provided that property not yet definitely condemned should be mutually restored. Chief Justice Marshall held that the property had not been definitely condemned, since the judgment of condemnation had been appealed from and was undecided at the time when the treaty took effect; that, therefore, the property should be restored, the

chief justice holding: 'It is, in the general, true that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. * * * In such a case, the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed, but in violation of law, the judgment must be set aside.' See Lovelace v. Boatsman, 113 Neb. 145, 202 N. W. 418; Kleckner v. Turk, 45 Neb. 176, 63 N. W. 469."

There is no question but that the Legislature as to penalty provisions had the right to provide that L. B. 17 would be effective as to cases pending on appeal. The question then is not what the Legislature could lawfully do, but what it actually did do in L. B. 17.

It is the plaintiffs' contention that the Legislature, in using the term "final judgment" used it in its generally accepted sense, which in this case would mean a judgment disposing of the merits of the controversy between the parties in the court of original jurisdiction. This, in a strict legal sense, appears to be the universally accepted meaning of the term. A final judgment is one which puts an end to an action at law by declaring that the plaintiff either has or has not entitled himself to recover the remedy he sues for. 3 Blackstone Comm. 398.

The rule announced by the United States Supreme Court, unless the context of the act requires otherwise, is as follows: "The rule is well settled and of long standing that a judgment or decree to be final * * * must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but execute the judgment or decree it had already rendered." Bostwick v. Brinkerhoff, 106 U. S. 3, 1 S. Ct.

15, 27 L. Ed. 73. See, also, LaBourgogne, 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973.

A final judgment is one that disposes of the merits of the case in the court of original jurisdiction. See, Nelson v. Brown, 59 Vt. 600, 10 A. 721; Frank P. Miller Paper Co. v. Keystone Coal & Coke Co., 275 Pa. 40, 118 A. 565; Sanders v. May, 173 N. C. 47, 91 S. E. 526; Camp Phosphate Co. v. Anderson, 48 Fla. 226, 37 So. 722; Lamberton v. McCarthy, 30 Idaho 707, 168 P. 11; Goodloe v. City of Richmond, 278 Ky. 794, 129 S. W. 2d 563; Daniels v. Daniels, 9 Colo. 133, 10 P. 657; Kist v. Coughlin, 210 Ind. 622, 1 N. E. 2d 602; State v. Logan, 1 Nev. 509; Fullen v. Fullen, 21 N. M. 212, 153 P. 294.

It is axiomatic that only final judgments are appealable to this court. See cases collected under Nebraska Digest, Appeal and Error, Key No. 66. This has always been the Nebraska rule. In Daniels v. Tibbets, 16 Neb. 666, 21 N. W. 454, we said: "To obtain a review in this court there must be a final judgment upon the merits of the case in the court below. Riddle v. Yates, 10 Neb., 510. Nichols, Shepherd & Co. v. Hail, 5 Neb., 194."

In Anson v. Kruse, 147 Neb. 989, 25 N. W. 2d 896, quoting the early case of Hall v. Vanier, 7 Neb. 397, we said: "A final judgment is one that disposes of the case either by dismissing it before hearing is had upon the merits, or after trial by rendition of judgment for the plaintiff or defendant."

Our statute defines "judgment" as: "* * * the final determination of the rights of the parties in an action." § 25-1301, R. S. Supp., 1961. In section 25-1905, R. R. S. 1943, we find the following language, which indicates the application of the common meaning of the term "final judgment": "The plaintiff in error shall file with his petition a transcript of the proceedings containing *the final judgment* * * * sought to be reversed, vacated or modified." (Emphasis supplied.)

In the instant case judgment was rendered in the district court against both defendants. Only one of them,

Mobile Home Finance Company, perfected an appeal to this court. This defendant argues that the judgment cannot be considered as final because it is subject to reversal, that it is to be considered final only for the limited purpose of appeal. Appeal in no way affects its finality. It is considered as final until it is reversed. As we said in Creighton v. Keith, 50 Neb. 810, 70 N. W. 406: " 'If the judgment had not been appealed from it would, upon a familiar elementary principle, have so completely terminated and adjudicated all the questions embraced within the issues as to conclude the parties. The appeal does not take from the judgment its chief and much valued characteristic,—that of terminating the litigation by a final and conclusive adjudication; on the contrary, the judgment retains that characteristic and possesses that effect until reversed.' (Elliott, Appellate Procedure, sec. 544.) "

Our law specifically provides that no appeal shall act as a supersedeas unless a supersedeas bond is filed. § 25-1916, R. R. S. 1943. Unless such bond is filed a judgment is enforceable by appropriate writ even though appeal may be pending. Could this be done if we did not consider the judgment as final until reversed or vacated?

Even though a judgment has been appealed and affirmed in this court, it still might subsequently be vacated for fraud in a proper case. Under the provisions of section 25-2001, R. R. S. 1943, many judgments which have been considered final for years have been vacated. No one questions the fact that until vacated they were final judgments.

A case closely analogous in many ways to the instant one because of the similarity of statutory provisions that a judgment may be enforced unless superseded and a retroactive statute was involved, is In re Bailey, 40 N. Y. S. 2d 746, 265 App. Div. 758, in which we find the following: "The more serious question is whether the petitioners acquired any rights under the statute *in view of the fact that the original judgment was en-*

tered prior to the effective date of the statute, and its retroactive provisions are limited to pending actions 'in which no final judgment has been made and entered.' The determination of this question depends upon the construction to be given to the words 'final judgment.' (Emphasis supplied.)

"The expression 'final judgment' has a well-defined meaning in the Civil Practice Act. It designates that judgment of the court of original jurisdiction by which the rights of the parties are adjudicated and determined. The finality of the judgment so entered is not affected by the pendency of an appeal. * * * In this State in the absence of a stay a judgment entered in the Supreme Court has complete finality. Execution may be entered thereon even though an appeal is pending. The judgment may be satisfied while the appeal is pending. Though there may be a reversal and another final judgment, nevertheless, the first judgment was a final judgment in the action." This case was affirmed by the Court of Appeals in In re Bailey, 291 N. Y. 534, 50 N. E. 2d 653. The only question on appeal was the meaning of the term "final judgment."

In United States Cas. Ins. Co. v. Gilmore, 6 Ohio L. Ab. 334, the court held that proceedings in error to reverse a judgment do not render it any less final.

In Edwards v. Fidelity & Casualty Co. of New York, 11 La. App. 176, 123 So. 162, in which it was necessary to determine the meaning of the term "final judgment" in an insurance liability policy, we find the following: "Within liability policy providing that no action shall be brought against insurer to recover under it till final judgment shall have been recovered against assured, judgment is 'final,' as soon as there is a right to execute it against assured, notwithstanding a devolutive appeal."

In Sweet v. Sherman, 21 Vt. 23, the Vermont court held that a judgment obtained in a lower court is the final judgment in the suit even though the case is pending in the Supreme Court.

The meaning of "final judgment" is so well established that some states, such as California, have found it advisable to specifically legislate on the point. Section 1049 of the California Code of Civil Procedure provides that an action is deemed to be pending until its final determination on appeal or until the time for appeal has passed.

In Gray v. Sawyer (Ky. App.), 252 S. W. 2d 10, the Kentucky court held that the term "final judgment" as used in their statute providing that no appeal for a new trial on the grounds of newly discovered evidence could be made later than the second term after its discovery nor more than 3 years after final judgment, meant final judgment in the trial court and not the judgment rendered by the court on appeal.

There is an even more potent argument as to the meaning intended by the language used in L. B. 17. In City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777, quoted heretofore, the Legislature in the acts there involved specifically provided the acts should be: "* * * taken to apply to any case now pending in which judgment has not become final *in a court of last resort.*" (Italics supplied.) Laws 1935, c. 31, p. 135, c. 88, p. 284. This language leaves no room for argument. It clearly shows the intention of the Legislature. The act in question, L. B. 17, however, does not so provide. It simply uses the term, "reduced to a final judgment." If it had been the intention of the Legislature to subject cases pending on appeal to the legislation, it would have been an easy matter to have so provided. That is the method it has employed in the past. It is not the province of the court to provide an interpretation which the Legislature might have adopted if it had been called to its attention. This must be so where the term used has so universal a meaning as the one used.

For the reasons given, we find L. B. 17 not applicable

to the instant case, and affirm the judgment of the trial court.

AFFIRMED.

CARTER, J., dissenting.

The question presented in this case is the meaning of the words "final judgment" as used in section 5, L. B. 17, Extraordinary Session, 1963. This section states in part: "Except as to those transactions on which an action at law or in equity has been reduced to a final judgment as of the effective date of this act, the penalty provisions of * * * (L. B. 17) shall apply to all transactions made prior to the effective date of this act."

The general rule is that a statute which the Legislature could properly make retroactive, which takes effect pending an appeal, should be decided on the law existing at the time of decision in the appellate court. I concur with the majority on this point. It is the holding of the majority opinion, however, that the questioned language is a restriction on the general rule and that any case that has been placed in the form of a judgment is not entitled to the benefit of the retroactive provisions of the act.

The words "final judgment" have varied meanings. Whether or not a judgment is final depends upon the sense in which it is used. A text writer has stated it as follows: "In determining whether a judgment is 'final,' no hard and fast definition or test applicable to all situations can be given, since finality depends somewhat on the purpose for which, and the standpoint from which, the judgment is being considered, and it may be final for one purpose and not for another." 49 C. J. S., Judgments, § 11, p. 35.

I state without fear of contradiction that no case can be found that determines the precise point before us. The majority opinion relies on cases from this jurisdiction defining "final judgment" for the purpose of taking an appeal under our appeal statute. But the term "final judgment" as used in the statute before us does not in-

volve a procedural matter but a substantive one. The definition of the term "final judgment" in a procedural statute is not at all applicable to its use in a statute on an unrelated subject matter.

The majority opinion relies largely on the case of In re Bailey, 40 N. Y. S. 2d 746, 265 App. Div. 758. I concede the quoted portion of the case appears to support the majority holding. But an examination of the whole opinion reveals that it too was dealing with a procedural matter, which was the controlling factor in the decision, as shown by the following from that opinion: "While Section 61-a is found in the General Corporation Law, it is by its terms made a part of the costs statutes of the State and in determining the meaning of terms used therein, it must be assumed that they are used in the same sense as in the Civil Practice Act which makes general provisions for the same subject."

The majority opinion states, as a more potent reason for the result reached, that the statute involved in City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777, used the expression "taken to apply to any case now pending in which judgment has not become final in a court of last resort." As I understand the reasoning of the author, this precludes the use of any other language in a statute to indicate that the final termination of the litigation was intended. This assertion implies that legislatures are bound as are courts to adhere to and to be consistent with previous action. This is, of course, not true. One legislature cannot bind another, and a later legislature is not bound to use identical terms to accomplish the same result. The controlling rule is: What did the Legislature intend in using the questioned nomenclature, and not how some previous legislature chose to express itself in some collateral matter. In my judgment the statute involved in the Gage County case is not authority for anything in the instant case.

I submit that the authorities cited in the majority opinion do not support the result reached. I submit

further that the case should be decided on recognized rules of statutory construction.

In determining the intent of the Legislature in the use of an ambiguous provision, it is proper to consider, as an aid to construction, the history of the legislation, the object to be accomplished, and the evils or mischief sought to be remedied. The origin of the legislation with which we are here concerned arose in our holding the 1959 Nebraska Installment Sales Act unconstitutional in Elder v. Doerr, 175 Neb. 483, 122 N. W. 2d 528, and the 1963 Nebraska Installment Sales Act unconstitutional in Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844. These holdings, in connection with our previous decision in Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122, subject installment loan contracts, declared to be invalid under the Installment Sales Acts, to the penalties of the Installment Loan Act, which penalties provided for the loss of principal, interest, and charges.

Lending agencies thereupon assumed a position of injured innocence, asserting that the number and amount of such invalid loans was such that the economy of the state was threatened with serious consequences. A special session of the Legislature was called and L. B. 17, among others, was enacted, specifically providing for its retroactive effect.

The purpose of the act was to validate all previous installment sale contracts, not just some of them, and to reduce the penalty to a loss of interest and charges. This is made clear by the title to the act which provides: "An Act to amend * * * relating to installment loans; to change the penalties and the remedies relating to installment loans; to declare that these amendments shall apply retroactively to existing installment loans made prior to the effective date of this act; * * *." It will be observed that the title contained no words of limitation upon loans made prior to the effective date of the act.

The object of the legislation was to validate installment contracts entered into previous to the effective

date of the act. Its purpose was to give validity to all previous installment contracts and to provide a new penalty for their violation with retroactive effect. There is nothing in the act to indicate that any installment contracts were to be excepted from its operation other than the words excepting those that had been reduced to final judgment.

At the same session of the Legislature at which L. B. 17 was enacted, the Legislature enacted L. B. 16, dealing with the same subject matter, and the latter may be considered in determining the intent of the Legislature in the present act. In section 3 of L. B. 16 it is provided: "In the event any such agreement is judicially determined to constitute, in whole or in part, a loan with interest, the applicable limit on such interest shall be that set forth in section 45-101, Revised Statutes Supplement, 1961, * * * and the sole remedy or defense available to such a buyer by reason thereof shall be that prescribed in section 45-105, Reissue Revised Statutes of Nebraska, 1943." The judicial determination therein referred to contemplates the existence of a judgment. The intent of the provision is clear that the Legislature intended no limited operation of the act. From this it must be conclusively inferred that no such limited operation was intended in L. B. 17.

At the same session of the Legislature L. B. 19 was enacted. In that statute the general intent of the Legislature to validate all installment contracts entered into prior to the effective date of L. B. 17 is shown by the following language in section 1, subsection (4), thereof: "Common fairness and natural justice dictate that persons who contracted in good faith in accordance with such statutes, if judicially determined to be unconstitutional, should not be penalized or one party placed at a disadvantage to the other by reason thereof." It was clearly the intent of the Legislature by the foregoing to validate all installment contracts previously made, and not validate some, but not others.

While L. B. 16 and L. B. 19 were declared unconstitutional in Davis v. General Motors Acceptance Corp., 176 Neb. 865, 127 N. W. 2d 907, this is not a bar to their consideration in determining the intent of the Legislature in enacting L. B. 17. Board of Commissioners v. State, 184 Ind. 418, 111 N. E. 417. In the last-cited case the court said: "Of course, the legislative intent, express or implied, must be given effect when ascertained. In seeking such intent, however, courts may invoke the aid of other acts of the legislature at the same session, even if such acts are unconstitutional or were vetoed."

It is my conclusion that after considering the history of the legislation, the related statutes enacted at the same legislative session, the multiple meanings of the term "final judgment," the object to be accomplished, the evils and mischief sought to be remedied, and the specific situation the Legislature had before it, the Legislature intended the words "final judgment" to mean a judgment that terminated the litigation in which contractual rights have been finally merged and vested in the judgment, and the judgment thereby placed beyond the power of the courts or legislatures to disturb as to its finality. A judgment from which an appeal has been taken has not, of course, reached such a finality. Under the holding of the majority, the retroactive benefit of the statute is denied to a lender whose contractual rights have been determined in any court, whether it be the justice, municipal, county, or district courts, even if an appeal is pending. I cannot bring myself to believe that the Legislature intended any such result. To me, the Legislature used the words "final judgment" in its general and colloquial sense, and not in any technical sense, which makes its meaning synonymous with a judgment completely adjudicating the litigation and beyond the power of courts or legislatures to interfere.

Whatever may have been the methods employed or the motivations or pressures involved in its passage, the intention of the Legislature appears abundantly

clear to be contrary to the majority holding. I submit that the majority opinion is not supported by applicable case law of this or any other jurisdiction. I submit also that it cannot be sustained under the ordinary rules of statutory construction. I submit further that it is contrary to the manifest intention of the Legislature and produces a result that was not within the legislative contemplation. Under such circumstances I deem the judicially imposed limitation on the retroactive effect of the statute to be unreasonable and a nullification of the plain legislative remedy the Legislature sought to provide. Being firmly convinced of the validity of my position, I am obliged to voice my disagreement with the majority opinion.

BROWER, J., concurs in this dissent.